500

66 A.3d 630

STATE of Maryland

v.

Sean FENNELL.

Misc. Docket AG No. 72, Sept. Term, 2012.

Court of Appeals of Maryland.

May 17, 2013.

502

504

Cathleen C. Brockmeyer, Assistant Attorney General, (Douglas F. Gansler, Attorney General of Maryland, Baltimore, MD), on brief, for Petitioner.

Scott L. Rolle, (Law Offices of Scott L. Rolle, LLC, Frederick, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

HARRELL, J.

The Double Jeopardy Clause of the United States Constitution, as well as Maryland common law, protects a defendant from being subject twice to criminal proceedings for the same offense. U.S. Const. amend. V; *Hubbard v. State,* 395 Md. 73, 91–92, 909 A.2d 270, 280–81 (2006). Where a mistrial is declared because of manifest necessity, however, retrial is not prohibited. *Hubbard,* 395 Md. at 89, 909 A.2d at 279.

Prior to the conclusion of jury deliberations in the present case in the Circuit Court for Montgomery County, the jury sent an unsolicited, completed verdict sheet to the trial judge indicating apparently that the jury voted unanimously to acquit Respondent, Sean Fennell, on charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery. The jury sheet indicated further, however, that the jury had not agreed unanimously as to disposition of an additional charge of robbery and a lesser included charge to first degree assault of second degree assault. After examining this "gift," the trial judge instructed the jury to continue to deliberate "regarding the counts as to which you are undecided." The jury continued to deliberate, but, upon being called back into open court, indicated that it was not making progress and was unable to reach a unanimous verdict. Fennell, through counsel, requested of the judge that he take a partial verdict on the counts as to which the jury indicated unanimity previously. The State objected. The judge declared a mistrial as to all counts. A retrial date

was scheduled. Fennell filed a motion to bar retrial on the charges for which he believed the first jury acquitted him. This motion was denied, which lead to this appeal.

On these facts, all agree now that Fennell may be retried on the charges of second degree assault and robbery; the parties diverge, however, as to whether Fennell may be retried for first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery. For reasons we shall explain, we conclude, on the unusual posture of this case, that retrial of Fennell on the latter three charges is prohibited by principles of double jeopardy.

## RELEVANT FACTUAL [1] AND PROCEDURAL BACKGROUND

On 6 May 2010, Fennell was indicted in the Circuit Court on the following four counts: (1) first degree assault; (2) conspiracy to commit first degree assault; (3) robbery; and, (4) conspiracy to commit robbery. A one day jury trial took place on 18 October 2010. The jury began deliberations at approximately 5:50 p.m.[2] At approximately 9:00 p.m., the jury gave the bailiff a completed verdict sheet to take to the judge. The verdict sheet read as follows:

**Count One:** As to the charge of First Degree Assault, we, the jury, find the Defendant:

> Not Guilty *12* Guilty *0*

If you find the Defendant guilty of Count One, go on to decide Count Two. If you find the defendant not guilty of First Degree Assault, then consider whether he is, guilty, as to the charge of Second Degree Assault:

---

**1.** We need not recount the facts underlying the charges as they are not relevant to the legal dispute presented by the case in the posture it reaches us.

**2.** The jury sent to the judge a note, prior to the critical communications at the heart of this case, asking, at approximately 8:10 p.m., "What do we do if we cannot come to a unanimous decision?" The trial judge wrote back a response, with the consent of counsel, that the verdict "must be unanimous, please continue to deliberate."

Not Guilty *6* Guilty *6*

**Count Two:** As to the charge of Conspiracy to commit First Degree Assault, we, the jury, find the Defendant:

Not Guilty *12* Guilty *0*

**Count Three:** As to the charge of Robbery, we, the jury, find the Defendant:

Not Guilty *6* Guilty *5*[3]

**Count Four:** As to the charge of Conspiracy to Commit Robbery, we, the jury, find the Defendant:

Not Guilty *12* Guilty *0*

■ After sharing the unsolicited verdict sheet with the parties, the following exchange occurred between counsel and the judge:

THE COURT: Please have a seat. I thought I had seen everything. Apparently, they knocked on the door, and handed this to [the bailiff], having been fed.

[DEFENSE COUNSEL]: Interesting that Count 3 doesn't add up to 12. You can't abstain, right?

THE COURT: Well, they're forcing the issue a little bit. The jury has obviously not reached a verdict on about half the counts. They went out about 5:00, didn't they?

[COURT CLERK]: I believe it was at 10 of 6:00.

THE COURT: Ten of 6:00.

[PROSECUTOR]: Yes, I thought it was closer to 6:00.

THE COURT: The question now is like I say three options. They can continue to deliberate tonight, come back tomorrow, or call it a day. They haven't been out very long. How about please continue to deliberate?

[PROSECUTOR]: I know there's a specific jury instruction for—

THE COURT: I think we already gave it.

[PROSECUTOR]: Okay.

---

**3.** This is not a typographical error in this opinion. It is the number entered by whomever on the twelve-person jury filled in the verdict sheet.

THE COURT: The [modified *Allen* [4] ] charge—

[PROSECUTOR]: Yes.

THE COURT: Yes, I think that was—

\* \* \*

Please continue to deliberate. Your verdict must be unanimous?

[DEFENSE COUNSEL]: Judge?

[THE COURT]: Yes, sir.

[DEFENSE COUNSEL]: The only thing I would ask you to consider would be please continue to deliberate on the counts of which you are still undecided. Those must be unanimous, as well. Would that work?

THE COURT: Yes, as to which you remain undecided. Please continue to deliberate regarding the counts as to which you are undecided. Your verdict as to each count must be unanimous. Thank you.

Well, thank you. I don't think we ought to keep them past 9:30 [p.m.].

[DEFENSE COUNSEL]: Okay.

[PROSECUTOR]: Okay.

[THE COURT]: Thank you.

[PROSECUTOR]: Thank you.

[THE COURT]: I guess we better send [the filled-in verdict sheet] back in there, or give them a clean copy.

THE BAILIFF: I gave them a clean copy.

---

**4.** An *Allen* charge is derived from an instruction given to a deadlocked jury as discussed by the United States Supreme Court in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In *Allen*, the Supreme Court approved an instruction "in which the jury was specifically asked to conciliate their differences and reach a verdict." *Kelly v. State*, 270 Md. 139, 140 n. 1, 310 A.2d 538, 539 n. 1 (1973). The instruction "is intended to stress to jurors the necessity of unanimity in their decision, as well as to encourage a juror to listen to the viewpoints of the other jurors." *Ruffin v. State*, 394 Md. 355, 359 n. 2, 906 A.2d 360, 363 n. 2 (2006).

At approximately 9:30 p.m., the trial judge discussed with counsel the lateness of the hour and the options regarding continued jury deliberations:

> THE COURT: I don't think we ought to keep them any longer tonight. The question is do we make them come back in the morning. I'll hear whatever suggestions either of you want to make at this point.

> [DEFENSE COUNSEL]: Your Honor, possibly we could just bring them in and say exactly what you said, do you guys think it would be worth it deliberating [ ] tomorrow or are you making progress.

> [PROSECUTOR]: I think, in reality, they really haven't been deliberating that long. I don't think, in this kind of case, it would be that unusual. And I think it is obviously worth it to bring them back in the morning.

> THE COURT: How long have they been—three and a half hours. Well, let's bring them in and see whether they're close to reaching a verdict.

The jury having been brought into the courtroom, the trial judge engaged in the following exchange with the jury foreperson:

> THE COURT: Please have a seat. Madam Forelady, is there any possibility that upon further deliberation this evening you could reach a verdict?

> THE FOREPERSON: No.

> THE COURT: Well, then the question is could you reach one tomorrow? Are you making any progress?

> THE FOREPERSON: No, it's—

> (Discussion off the record.)

> THE FOREPERSON: Yeah, there's a clear division on the amount of evidence, and how you read the evidence.

> THE COURT: I'm going to ask you to go back in there while I confer with counsel.

The jury left the courtroom, and then the following ensued:

> THE COURT: It doesn't look to me like much has changed in the last hour or so.

[PROSECUTOR]: It probably depends who you ask sitting there.

[DEFENSE COUNSEL]: Yes, they're split 50/50 on whether—

[PROSECUTOR]: They're making progress or not.

[THE COURT]: They can't even decide if they're making progress.

[DEFENSE COUNSEL]: Right. We're ready to ask you to let it go, Judge. You know, take the three or four they gave, and—

[PROSECUTOR]: We're not in a position to accept a partial verdict.

THE COURT: I think, reluctantly, I must declare a mistrial. I don't think there's going to be any movement. There's no sign of it. I don't think there's a lack of evidence. I just think that the evidence is capable of more than one interpretation depending on whom you believe.

So, I think for better or worse, that's it.

[DEFENSE COUNSEL]: So, the one's [sic] where they have reached a unanimous verdict we're not—

THE COURT: I'm not going to take a verdict at all.

[DEFENSE COUNSEL]: Okay.

[PROSECUTOR]: Obviously, we can't get a trial date from assignment at this point. We'll call tomorrow.

(The jury entered the courtroom.)

THE COURT: Ladies and gentlemen of the jury, the Court determines that it's very unlikely that you will reach a verdict. I hereby declare a mistrial, which means that the State will have the option of retrying this case at some future date.

On 22 December 2010,[5] Fennell filed a Motion to Bar Retrial Due to Double Jeopardy, claiming that the jury re-

---

**5.** Previously, a status conference had been held at which a new trial date had been set to re-try Fennell on all counts.

turned a verdict sheet acquitting Fennell unanimously of first degree assault (count 1), conspiracy to commit first degree assault (count 2), and conspiracy to commit robbery (count 4), and indicating that it was hung on the charges of second degree assault (a lesser included offense of count 1) and robbery (count 3). Because the jury found him not guilty of three counts, Fennell argued that retrial of those three counts was prohibited by double jeopardy. Fennell consented to the mistrial on the charges of second degree assault and robbery, however, and thus conceded that the State is free to prosecute him anew on those charges. The State opposed entry of a partial verdict, riposting that, because a partial verdict was not taken, a verdict was not received by the court on any count, and a manifest necessity existed for a mistrial, it was permitted to retry Fennell on all counts. On 22 February 2011, the Circuit Court granted Fennell's motion to bar retrial as to counts 1 (not including the lesser-included offense), 2, and 4. The State filed, along with a motion to reconsider the February 22 order, a supplemental opposition to the motion to bar retrial. The Circuit Court agreed to reconsider, vacated its judgment entered on February 22, and, without a hearing or written elaboration, denied Fennell's motion to bar retrial. Fennell appealed.

A panel of the Court of Special Appeals, in an unreported opinion filed on 4 May 2012, reversed the judgment of the Circuit Court, determining that there was no manifest necessity for a mistrial and that retrial on the three counts for which the jury indicated a unanimous vote on the verdict sheet was barred by double jeopardy. Characterizing the trial court's action as declaring *sua sponte* a mistrial, the intermediate appellate court noted that a mistrial was appropriate only if there was "manifest necessity for the act." (quoting *Cornish v. State*, 272 Md. 312, 317, 322 A.2d 880, 884 (1974) (quoting *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824))). In order to find a manifest necessity, the court stated, the trial judge "must engage in the process of exploring reasonable alternatives and determine that there is no reasonable alternative to the mistrial." (quoting *Hubbard v.*

*State,* 395 Md. at 92, 909 A.2d at 281). The court determined that, in light of the jury's prior transmittal of a verdict sheet to the trial judge indicating unanimity as to three charges and the judge's attendant instruction, the jury's subsequent statement of deadlock was ambiguous as to on which counts disagreement existed. Thus, prior to declaring a mistrial, the judge was required to determine that there was no reasonable alternative. Because the trial court had the opportunity to clarify whether the jury was deadlocked as to all, or just the previously undecided, charges, inquire whether the jury intended to render a unanimous partial verdict as to the three counts indicated on the verdict sheet, or request reasonably the jury to return the next morning to continue deliberations, the appellate court determined that "the trial judge failed to 'engage in the process of exploring reasonable alternatives.' " (quoting *Hubbard,* 395 Md. at 92, 909 A.2d at 281). Thus, the intermediate appellate court determined that no manifest necessity for the mistrial existed as to the three counts indicated on the verdict sheet for which the jury voted unanimously to acquit, and retrial of those three counts was barred by double jeopardy.

The State filed a petition for writ of *certiorari,* which we granted on 19 October 2012, 429 Md. 81, 54 A.3d 759 (2012), to consider the following questions:

(1) Where the jury sends to the court a verdict sheet documenting the jurors' votes as to each charge and the court, with the consent of defense counsel, sends the jury back for further deliberations, is it a proper exercise of the court's discretion to later declare a mistrial as to all charges when, upon further inquiry with the jury, the court concluded that the jurors were unable to reach a verdict?

(2) Is a circuit court required to accept a partial verdict at the request of one party and over the objection of the other?

## ANALYSIS

The State contends primarily that the trial judge exercised properly his discretion in declaring a mistrial be-

cause neither the federal Constitution, the common law of Maryland, nor Maryland Rule 4–327(d) [6] require the trial judge to consider specific alternatives to a mistrial where the jury is deadlocked and gives no indication of unanimity on all counts. Because the trial judge acted therefore within his discretion in denying Fennell's request to take a partial verdict, the State argues that retrial on all counts is not prohibited by double jeopardy. By contrast, Fennell contends that the record demonstrates unanimous agreement by the jury as to three of the five charges. In his view, the trial court's failure to enter a partial verdict on these charges, pursuant to Maryland Rule 4–327(d), violated his constitutional rights. Although we accord great deference to the decision of a trial judge in concluding that a jury would be unlikely to reach a unanimous decision on all counts, whether there was a manifest necessity for a mistrial implicates principles of double jeopardy. We review without deference, considering the totality of the circumstances, the legal conclusions of the trial court. *Giddins v. State,* 393 Md. 1, 15, 899 A.2d 139, 147 (2005); *Bishop v. State,* 341 Md. 288, 292, 670 A.2d 452, 454–55

---

6. Maryland Rule 4–327(d) states, "When there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree may be tried again." In Maryland, a partial verdict is "a verdict on less than all counts in a multi-count case." *Caldwell v. State,* 164 Md.App. 612, 631, 884 A.2d 199, 209 (2005). Although partial verdicts are accepted as a general rule, *see generally Selvester v. United States,* 170 U.S. 262, 18 S.Ct. 580, 42 L.Ed. 1029 (1898), jurisdictions are split generally as to whether partial verdicts may be entered on one or more lesser included offenses. *See, e.g., State v. Tate,* 256 Conn. 262, 773 A.2d 308, 322–23 (2001) (discussing jurisdictions permitting a court to take a partial verdict of acquittal on a greater offense when the jury is deadlocked on the lesser offenses); *Whiteaker v. State,* 808 P.2d 270, 274–75 (Alaska Ct.App.1991) (discussing jurisdictional differences regarding acceptance of partial verdicts on greater and lesser included offenses). The Maryland Rules do not specify (and we have not decided expressly) whether a partial verdict may be entered on a greater offense where the jury is hung as to the lesser included offenses. Because the parties do not dispute the Court of Special Appeals's decision that retrial is barred by double jeopardy on these grounds, we assume, without deciding, that the manifest necessity analysis with regard to partial verdicts applies equally where a jury votes to acquit on a greater offense and is hung as to a lesser-included offense.

**514** 

(1996); *Caldwell v. State*, 164 Md.App. at 643, 884 A.2d at 216-17.

 The Double Jeopardy Clause of the United States Constitution, which applies to state criminal proceedings through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 796, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 715 (1969), provides that "[n]o person [shall] be subject for the same offence to be twice put in jeopardy of life and limb." U.S. Const. amend. V. Although the Maryland Constitution does not contain an analogous clause, Maryland common law protects similarly an accused against double jeopardy.[7] *Kendall v. State*, 429 Md. 476, 484 n. 11, 56 A.3d 223, 228 n. 11 (2012); *Hubbard*, 395 Md. at 91–92, 909 A.2d at 280–81. The Double Jeopardy Clause prohibits unequivocally the retrial of a criminal defendant following a final judgment of acquittal. *Hubbard*, 395 Md. at 89, 909 A.2d at 279 (2006) (citing *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 726–27 (1978)). Retrial may be permitted, however, "when a criminal proceeding is concluded after jeopardy attaches but without resolving the merits of the case." [8] *Id.*

---

7. The Maryland common law prohibition on double jeopardy employs the same principles as the federal Constitution. *Hubbard*, 395 Md. at 91, 909 A.2d at 280. *See United States v. Wilson*, 420 U.S. 332, 339–42, 95 S.Ct. 1013, 1020–21, 43 L.Ed.2d 232, 239–41 (1975) (discussing the foundation of double jeopardy principles in the common law pleas of *autrefois acquit, autrefois convict,* and pardon); *State v. Taylor*, 371 Md. 617, 630–31, 810 A.2d 964, 971–72 (2002) (same). In considering whether a mistrial was granted properly by the trial court, this Court has followed generally the principles laid out by the Supreme Court. *See, e.g., Hubbard*, 395 Md. at 91, 909 A.2d at 280 (relying on the Supreme Court's recognition that "there must be no reasonable alternative to the declaration of a mistrial" to establish manifest necessity); *State v. Woodson*, 338 Md. 322, 329, 658 A.2d 272, 276 (1995) (relying on Supreme Court precedent in discussing manifest necessity); *State v. Crutchfield*, 318 Md. 200, 207–09, 567 A.2d 449, 452–53 (1989) (following the framework established by the Supreme Court in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), for the double jeopardy manifest necessity requirement); *Cornish v. State*, 272 Md. 312, 317–18, 322 A.2d 880, 884 (1974) (determining whether manifest necessity for a mistrial existed under Supreme Court case law).

8. As the Court of Special Appeals noted, no final judgment was entered with respect to any of the charges against Fennell. *See Ogundipe v.*

 Jeopardy attaches when the jury is empaneled and sworn, *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *State v. Woodson*, 338 Md. 322, 329, 658 A.2d 272, 276 (1995), and thus, the defendant's right to be free from double jeopardy embraces also his or her "right to have his [or her] trial completed by a particular tribunal." *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 727 (1978). If a defendant objects to the declaration of a mistrial, a mistrial must be manifestly necessary for the defendant to be retried or risk violating double jeopardy principles.[9] *Id.* at 505, 98 S.Ct. at 830, 54

---

*State*, 424 Md. 58, 72, 33 A.3d 984, 992 (2011) (noting that "the contents of the verdict sheet do not constitute the jury's verdict"). Ordinarily, absent a final judgment, the issue of whether a mistrial was granted properly is not appealable, unless the State attempts to re-prosecute the defendant on those counts, the defendant files a motion to dismiss based on double jeopardy, and the motion is denied by the trial court. *See Caldwell v. State*, 164 Md.App. 612, 648 & n. 8, 884 A.2d 199, 219 & n. 8 (2005). Under those circumstances, the trial court's decision is appealable immediately under the collateral order doctrine, *id.* at 648 n. 8, 884 A.2d at 219 n. 8 (citing *Abney v. United States*, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651, 661–62 (1977); *Parrott v. State*, 301 Md. 411, 424–25, 483 A.2d 68, 75 (1984)), which "treats as final and appealable interlocutory orders that (1) conclusively determine the disputed question; (2) resolve an important issue; (3) resolve an issue that is completely separate from the merits of the action; and (4) would be effectively unreviewable on appeal from a final judgment." *St. Joseph Medical Ctr., Inc. v. Cardiac Surgery Assocs., P.A.*, 392 Md. 75, 86, 896 A.2d 304, 310 (2006) (quoting *Nnoli v. Nnoli*, 389 Md. 315, 329, 884 A.2d 1215, 1223 (2005)). Here, Fennell's motion to bar retrial due to double jeopardy may be treated properly, under the collateral order doctrine, as a motion to dismiss because the motion was filed after a status conference at which a new trial date was set to prosecute him anew on all charges.

9. We note that, with respect to the three charges at issue here, the trial judge declared a *sua sponte* mistrial, in effect. Defense counsel consented—and indeed requested—a mistrial as to the two indisputably undecided charges, but requested a partial verdict (and thereby did not consent to the mistrial) as to the three charges at issue. Therefore, the manifest necessity standard applies. *See Washington*, 434 U.S. at 505, 98 S.Ct. at 824, 54 L.Ed.2d at 728; *Caldwell*, 164 Md.App. at 647, 884 A.2d at 219.

The State argued also in the Court of Special Appeals that Fennell did not object before the trial court to the declaration of a mistrial and thus the issue is not preserved for appellate review. Specifically, the State

L.Ed.2d at 728; *Mansfield v. State*, 422 Md. 269, 282, 29 A.3d 569, 577 (2011); *Hubbard*, 395 Md. at 89, 909 A.2d at 279; *Wynn v. State*, 388 Md. 423, 429, 879 A.2d 1097, 1101 (2005). Manifest necessity analysis generally requires a consideration of whether reasonable alternatives to a mistrial exist. *Cornish v. State*, 272 Md. 312, 322 A.2d 880, 886 (1974) ("[R]etrial is barred by the Fifth Amendment where reasonable alternatives to a mistrial, such as a continuance, are feasible and could cure the problem."); *see also United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, 165 (1824) (noting that trial judge should declare a mistrial over the defendant's objection "under urgent circumstances, and for very plain and obvious causes").

The decision to declare a mistrial is an exercise of the trial judge's discretion and is entitled to great deference by a reviewing court. *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1863, 176 L.Ed.2d 678, 687 (2010); *Washington*, 434 U.S. at 509–10, 98 S.Ct. at 832, 54 L.Ed.2d at 731. A genuinely deadlocked jury is considered the prototypical example of a manifest necessity for a mistrial. *Blueford v. Arkansas*, —— U.S. ——, ——, 132 S.Ct. 2044, 2052, 182 L.Ed.2d 937, 945 (2012); *State v. Crutchfield*, 318 Md. 200, 209, 567 A.2d 449, 453 (1989). The term "genuinely deadlocked" suggests, however, "more than an impasse; it invokes a moment where, if deliberations were to continue, 'there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.'" *United States v. Razmilovic*, 507

---

contended that, after his request for a partial verdict was denied, Fennell acquiesced in the court's decision by saying "Okay." For purposes of review, however, defense counsel's request that the trial court "take the three or four [verdicts] that [the jury] gave" was sufficient to indicate Fennell's desired course of action—that the court enter a verdict as to the three charges indicated—and thus preserves the issue for appellate review. *See* Md. R. 4–323(c) ("For the purposes of review by the trial court or on appeal of any other ruling or order, it is sufficient that a party, at the time the ruling or order is made or sought, makes known to the court the action that the party desires the court to take or the objection to the action of the court.").

F.3d 130, 137 (2d Cir.2007) (quoting *Washington*, 434 U.S. at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730).

 Consistent with the discretion vested in trial judges, the Supreme Court has declined repeatedly to require, as a matter of constitutional dimension, that trial judges undertake specific steps prior to declaring a mistrial. *Blueford,* —— U.S. at ——, 132 S.Ct. at 2052, 182 L.Ed.2d at 945; *Renico,* 559 U.S. at ——, 130 S.Ct. at 1864, 176 L.Ed.2d at 688. As the Supreme Court stated recently in *Renico v. Lett,* it has "never required a trial judge, before declaring a mistrial on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse." 559 U.S. at ——, 130 S.Ct. at 1864, 176 L.Ed.2d at 688. Rather, the determination of whether there is manifest necessity for a mistrial—or, a "high degree" of necessity, *Washington,* 434 U.S. at 506–07, 98 S.Ct. at 831, 54 L.Ed.2d at 728—is a fact–specific inquiry not reducible to "a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge." *Id.* at 505–06, 509–10, 98 S.Ct. at 830–32, 54 L.Ed.2d at 728–29 (noting that deference to a trial judge's discretion guards against the possibility of trial judges otherwise "employ[ing] coercive means to break the apparent deadlock," which might create "a significant risk that a verdict may result from the pressures inherent in the situation rather than the considered judgment of all the jurors"); *Perez,* 22 U.S. at 580, 6 L.Ed. at 165 (noting that trial judges must "tak[e] all the circumstances into consideration," "exercise a sound discretion," and use the power to declare a mistrial "with the greatest caution, under urgent circumstances").

The State criticizes the intermediate appellate court's reliance in the present case on our decision in *Hubbard v. State,* 395 Md. 73, 909 A.2d 270 (2006), in finding no manifest necessity for a mistrial here. In *Hubbard,* we considered whether manifest necessity for a mistrial existed where "a

witness, whose identification testimony against one defendant had been suppressed, was to be called by the State to testify against the co-defendant in a joint trial." 395 Md. at 77, 909 A.2d at 272. We noted that, "to determine whether manifest necessity to declare a mistrial over defense objection exists, the trial judge must engage in the process of exploring reasonable alternatives and determine that there is no reasonable alternative to the mistrial." *Id.* at 92, 909 A.2d at 281. Because the trial judge in *Hubbard* could have excluded reasonably the pre-trial identification testimony against both defendants, instead of declaring a mistrial, we determined that no manifest necessity existed. *Id.* at 93–96, 909 A.2d at 282–83. Here, because the trial judge could have inquired reasonably regarding the jury's intention to render a partial verdict or instructed the jury to continue deliberations, the Court of Special Appeals determined consequently that there was no apparent manifest necessity.

The State argues that, because *Hubbard* did not concern manifest necessity by reason of a deadlocked jury, it is inapposite to the present case. Instead, the State contends that the Supreme Court's recent decision in *Blueford v. Arkansas*, —— U.S. ——, 132 S.Ct. 2044, 182 L.Ed.2d 937 (2012), governs the manifest necessity analysis here.[10] In *Blueford*, the Supreme Court considered whether there was a manifest necessity for a mistrial where the jury indicated that it was "hopelessly deadlocked," after having previously announced orally in court, prior to being sent for further deliberations, that it agreed unanimously that the defendant was not guilty of at least two offenses, but was hung on the remaining offenses.[11] Blueford argued that the jury's colloquy with the trial court, in which it indicated that it agreed unanimously

---

**10.** The Supreme Court had not decided *Blueford* at the time the intermediate appellate court decided the present case.

**11.** The defendant in *Blueford* was charged with capital murder, which, under Arkansas law, contains the lesser-included offenses of first-degree murder, manslaughter, and negligent homicide. —— U.S. at ——, 132 S.Ct. at 2048, 182 L.Ed.2d at 941.

that he was not guilty of the greater two offenses, constituted an actual acquittal barring retrial. —— U.S. at ——, 132 S.Ct. at 2050, 182 L.Ed.2d at 943. In the alternative, Blueford maintained that no manifest necessity for a mistrial existed because the trial judge should have entered a partial verdict on the two greater offenses. *Id.* at ——, 132 S.Ct. at 2052, 182 L.Ed.2d at 945. With respect to his first contention, the Court noted that, because the jury was sent for further deliberations, but was not instructed that it could not reconsider the two offenses as to which it reached a unanimous agreement, any finality that might have attached to the jury's announcement dissipated. Thus, the jury's announcement could not operate as an acquittal. *Id.* at ——, 132 S.Ct. at 2050–52, 182 L.Ed.2d at 943–45. Regarding Blueford's latter contention, the Supreme Court reaffirmed its disinclination to impose specific requirements on trial judges prior to finding a manifest necessity. *Id.* at ——, 132 S.Ct. at 2050, 182 L.Ed.2d at 945. Noting that Arkansas law permitted the trial judge to accept verdicts only either acquitting on all counts or convicting on one, the Supreme Court concluded that the trial court had not abused its discretion in failing to act in some manner to provide the jury with an opportunity to give effect to its earlier votes. *Id.* at ——, 132 S.Ct. at 2052–53, 182 L.Ed.2d at 945–46.

We disagree with the implication of the State's theory that *Blueford* renders inapplicable, in cases where a judge determines a hung jury exists, our analysis in *Hubbard* requiring a judge to consider reasonable alternatives to a mistrial. Although the Supreme Court refuses to require trial courts to jump over specified hurdles in mechanical fashion prior to declaring a mistrial, its preference for the exercise of judicial discretion does not obviate the manifest necessity analysis. *See Somerville*, 410 U.S. at 462, 93 S.Ct. at 1069, 35 L.Ed.2d at 430 (noting that mistrial by manifest necessity is appropriate where "the ends of substantial justice cannot be attained without discontinuing the trial" (quoting *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904 (1961))). The trial court must determine still that no reason-

able alternative to a mistrial exists. In the context of a hung jury, therefore, the trial court must determine ordinarily that genuine jury deadlock exists, such that further deliberations are unlikely to be productive. *See Washington,* 434 U.S. at 509, 98 S.Ct. at 832, 54 L.Ed.2d at 730 (permitting retrial where the court discharges a "genuinely deadlocked jury"). This view is entirely consistent with the Supreme Court's decision in *Blueford.* The Court did not determine, in that case, that the manifest necessity standard is reached automatically whenever the judge determines that deadlock exists, without further inquiry. Rather, in *Blueford,* the Court reasoned that no further inquiry was needed to establish genuine deadlock after the jury indicated that it was deadlocked hopelessly and unlikely to reach a verdict. Any indication that the jury was in agreement unanimously on any charge disappeared. Moreover, even if unanimity was suggested, the taking of partial verdicts on the counts at issue was prohibited by Arkansas state law, *see Blueford v. State,* 2011 Ark. 8, 370 S.W.3d 496, 502 (2011), *aff'd,* —— U.S. ——, 132 S.Ct. 2044, 182 L.Ed.2d 937 (2012)—thus, the jury's status of agreement or disagreement on the greater offenses, where at least one charge was definitively unresolved, could not impact the trial judge's options regarding the entry of a verdict,[12] and a mistrial was necessary manifestly.

Unlike Arkansas, however, Maryland permits partial verdicts under the circumstances present here. In determining that no manifest necessity for a mistrial existed as to the three charges in dispute, the Court of Special Appeals relied implicitly on Maryland Rule 4–327(d), which provides that, "[w]hen there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any

---

12. In fact, some of the Amici in *Blueford* sought adoption of a *per se* rule requiring trial judges to take partial verdicts wherever any unanimity exists as a prerequisite to a finding of manifest necessity as to the remaining counts—in effect, requiring even states that do not permit partial verdicts in certain circumstances to accept them. See, *e.g.,* Brief for the National Association of Criminal Defense Lawyers as Amicus Curiae Supporting Petitioner, *Blueford v. Arkansas,* —— U.S. ——, 132 S.Ct. 2044, 182 L.Ed.2d 937 (2012).

count as to which the jury cannot agree may be tried again."
We have not stated explicitly, however, what obligations, if
any, the availability of partial verdicts places on trial judges in
determining whether there is a manifest necessity for a mistri-
al by virtue of a deadlocked jury, nor whether the availability
of partial verdicts changes the determination of whether a
jury's deadlock is genuine. *See generally State v. Woodson,*
338 Md. 322, 330 n. 2, 658 A.2d 272, 276 n. 2 (1995) (noting that
"Maryland Rule 4–327(d) does not provide whether it is in the
court's discretion to refuse to take a partial verdict when the
jury announces that it has reached a partial verdict," but
declining to consider the issue).

The State appears to concede in its brief that, if the jury
indicates an intention to render a partial verdict, "the court
may not preclude the jury from doing so." [13] (citing *United
States v. DiLapi,* 651 F.2d 140, 146 (2d Cir.1981)). The State
urges, however, that because the jury did "not indicate[ ] any
intention to render" a partial verdict in this case, the trial
court did not have any obligation to inquire into the jury's
desire to render a partial verdict.[14]

---

**13.** The majority of jurisdictions accepting partial verdicts are in accord
with this interpretation. *See, e.g., Wallace v. Havener,* 552 F.2d 721,
723 (6th Cir.1977) (holding that the trial judge abused his discretion in
not accepting partial verdicts as to counts on which the jury indicated
unanimity); *Daniels v. Burt,* 895 F.Supp. 180, 184 (E.D.Mich.1995)
("Had the jury indicated or even suggested that it had reached a verdict
as to some of the offenses, the trial judge would have constitutionally
erred in declaring a mistrial without accepting the jury's partial ver-
dict."); *Sturms v. Woodland Justice Court,* 4 Cal.App.3d 36, 84 Cal.Rptr.
69 (1970) (prohibiting retrial of a defendant as barred by double
jeopardy, due to discharge of the jury "without legal necessity," where
the judge declined to enter a partial verdict after the jury indicated that
it was agreed unanimously as to one count); *Oliver v. Justices of New
York Supreme Court of New York County,* 36 N.Y.2d 53, 364 N.Y.S.2d
874, 324 N.E.2d 348 (1974) (requiring trial judge to accept partial
verdict if the jury indicated agreement on some, but not all, counts, and
further deliberations would be fruitless).

**14.** Because it is not implicated in the present case, we need not
consider the trial judge's discretion as it pertains to accepting or
soliciting a partial verdict where the jury has not intimated that it may

■ We agree with the State that the mere theoretical availability of partial verdicts does not necessitate a further inquiry by the trial court where, for example, no party has requested a partial verdict be taken or the jury does not indicate that it has reached one. *See, e.g., United States v. DiLapi,* 651 F.2d 140, 147 (2d Cir.1981) (noting that "the absence of such an explanation [by the trial court regarding the jury's right to return a partial verdict] did not deny the appellants any protected right in a case such as this where the jury neither attempted to return a partial verdict nor even asked if it could do so"); *United States v. MacQueen,* 596 F.2d 76, 82 (2d Cir.1979) (declining to adopt "a *per se* rule that a mistrial is improperly declared whenever the trial judge fails to specifically inquire as to the possibility of a partial verdict"); *Whiteaker v. State,* 808 P.2d 270, 277 (Alaska Ct.App.1991) (declining "to place a burden on the trial judge to *sua sponte* inquire further or perform a special poll of jurors who deliberate on cases involving lesser included offenses"); *Speaks v. United States,* 617 A.2d 942, 952 (D.C.1992) (noting that imposing a *sua sponte* obligation on a trial judge to inquire regarding partial verdicts where not requested by defense counsel or indicated by the jury "threatens to disrupt the fine line which a trial judge must tread with respect to partial verdicts"). *But see State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146, 1151–52 (1977), *overruled on other grounds, State v. Wardlow,* 95 N.M. 585, 624 P.2d 527 (1981) (determining that no manifest necessity to declare a mistrial without a defendant's consent exists without the trial judge inquiring whether the jury reached a partial verdict). This does not mean, however, that the trial judge is not *permitted* to inquire of a jury as to the possibility of a partial verdict where it has not been indicated by the jury or requested by counsel—rather, it remains within the court's discretion to do so. *See generally Washington,* 434 U.S. at 506, 98 S.Ct. at 830–31, 54 L.Ed.2d at 728 (noting that manifest necessity is not "a standard that can

have reached one, but rather counsel requests a partial verdict to be entered.

be applied mechanically or without attention to the particular problem confronting the judge"); *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 557 (1971) (plurality opinion) (noting that, in considering when manifest necessity for a mistrial exists, "brightline rules based on either the source of the problem or the intended beneficiary of the ruling would only disserve the vital competing interests of the Government and the defendant").

Where, however, the jury indicates to the court that unanimity was achieved, at some point, on one or more counts, Maryland Rule 4–327(d) points the way for a trial judge to a reasonable alternative to the declaration of a mistrial. Thus, prior to declaring a mistrial without consent on those counts, the trial judge generally should take steps to determine that genuine deadlock exists as to those counts. *See, e.g., United States v. Razmilovic,* 507 F.3d 130, 137–40 (2d Cir.2007) (conducting a fact-specific inquiry into whether the jury was deadlocked genuinely); *In re Ford,* 987 F.2d 334, 340 (6th Cir.1992) (holding that the trial judge did not abuse his discretion in declining to instruct the jury regarding a partial verdict where the judge's examination of the tentative verdict sheets revealed no indication of jury unanimity). One reasonable alternative is an inquiry into the jury's status and intention to render a verdict regarding those counts as to which unanimity appears, self-reported, to exist.[15] In making this inquiry, however, the trial judge "treads a fine line . . . :

---

15. For example, in *State v. Lewis,* 172 N.C.App. 97, 616 S.E.2d 1, 6 (2005), the trial judge had the following colloquy with the jury after the jury indicated at the conclusion of deliberations that it could not reach a verdict:

THE COURT: Yesterday, at the end of the day, you didn't say that you had reached a—perhaps reached a verdict as to one case. In fact, had you reached a verdict as to one of the cases and not signed the verdict sheet?

FOREPERSON: (Nods head affirmatively.)

THE COURT: Is that still the case?

FOREPERSON: No.

THE COURT: So, at this particular point there is no verdict as to either case?

FOREPERSON: Exactly.

he must neither pressure the jury to reconsider what it had actually decided nor force the jury to turn a tentative decision into a final one." *United States v. Heriot*, 496 F.3d 601, 608 (6th Cir.2007) (quoting *United States v. Wheeler*, 802 F.2d 778, 781 (5th Cir.1986)); *see also Burnette v. State*, 280 Md. 88, 98, 371 A.2d 663, 668 (1977) ("Coercion of the jury for the purpose of breaking a deadlock must be avoided."). As the Court of Special Appeals noted in *Caldwell*, the trial judge may not accept a verdict that is tentative, and thus, in determining whether to accept a partial verdict, "must guard against the danger of transforming a provisional decision into a final verdict." 164 Md.App. at 643, 884 A.2d at 216. "Just as when the total circumstances disclose an ambiguity or qualification in a verdict, when they suggest that the jury has made a tentative decision, the court ... should inquire into the jury's intention *vel non* that the verdict be final, if such inquiry can be done non-coercively; return the jury for further deliberation; or, if that is not possible and there is manifest necessity, declare a mistrial." *Id.*

 Although we agree with the State that the partial verdict inquiry is largely an exercise of the trial judge's discretion, we disagree that the principle salvages the trial judge's conduct in the present case. The State characterizes the record in this case as demonstrating "clearly" that the jury did not intend to render a partial verdict. Viewing the record as a whole, however, we conclude that the jury's unsolicited submission of the completed verdict sheet, the trial judge's subsequent instructions, and the ultimate colloquy between the jury foreperson and the trial court reveals an ambiguity as to the jury's intent and resulting deadlock that was never resolved satisfactorily by the trial court. The jury's delivery to the court of the verdict sheet indicated facially that the jury agreed unanimously to acquit the defendant on the charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery, but was deadlocked as to the remaining two charges. The verdict sheet indicated unambiguously, at least at that stage in the

deliberations,[16] that the jury reached a verdict unanimously on three charges. Counsel did not request, and the trial court did not consider on the record, the entry of a partial verdict at that time. Rather, the trial court instructed the jury to resume deliberations. Consistent with defense counsel's request, the trial court's instructions to the jury read as follows: "Please continue to deliberate *regarding the counts to which you are undecided.* Your verdict as to each count must be unanimous." (Emphasis added).

In *Blueford,* the Supreme Court determined that, when the jury was sent for further deliberations, any finality that could be inferred from the jury's earlier rendering of the verdict sheet dissipated. Although the verdict sheet here was not final in any way so as to constitute a complete final verdict, *see Ogundipe,* 424 Md. at 72, 33 A.3d at 992, we note that, unlike in *Blueford,* the instructions to the jury could be understood reasonably as instructing the jury to continue deliberations only as to the charges of second degree assault and robbery. Although the trial court in no way prohibited the jury from reconsidering its prior vote, the instructions, which requested the jury to continue deliberations "regarding the counts as to which [they] are undecided," were given to the jury directly after the jury indicated to the court that apparently it was unanimous as to acquittal on the other three charges. Thus, one logical interpretation of the instructions by a reasonable juror would be that the trial court directed the jury to continue deliberating as to the two counts to which it indicated it had been unable to achieve unanimity.

The last colloquy between the judge and jury foreperson, occurring before the trial court declared the mistrial, must be

---

**16.** The State contends that Fennell should have sought the entry of a partial verdict at that juncture, rather than waiting until the termination of jury deliberations. Although the Maryland Rules do not prohibit the entry of an interim partial verdict, we do not think that defense counsel waived a timely partial verdict request by waiting until the conclusion of the proceeding. Nothing in the Maryland Rules requires counsel to request a partial verdict at the first intimation that the jury may have reached a verdict on one or more counts, but less than all counts.

read in light of this ambiguity. Thus, when the trial court later asked if the jury was likely to reach a verdict and had made any progress, the court's line of questioning could be regarded reasonably as an inquiry aimed at the remaining two charges. The exchange between the judge and jury foreperson did not indicate that the jury had changed its mind as to the other three charges. At the same time, however, the colloquy did not establish unequivocally that the jury was undecided then as to those three charges. Thus, the colloquy did not resolve the ambiguity of the jury's intention, but left essentially uncontradicted the "interim" verdict sheet. The justification for the trial court's denial of defense counsel's request for a partial verdict, without explanation is, therefore, unclear.

Unlike in *Caldwell*, where the trial judge sought actively the entry of partial verdicts due to emergency and brought the jury's deliberations "to an abrupt conclusion," the jury here returned the verdict sheet to the court "on [its] own timetable." 164 Md.App. at 643–44, 884 A.2d at 217. Asking the jury for further clarification of that decision, in light of the ambiguity inherent here, was unlikely to raise the specter of coercion—particularly where, as here, the trial court decided already, with Fennell's consent, to declare a mistrial as to the concededly unresolved counts. Because the trial judge was on notice that the jury may have reached a partial verdict, an ambiguity as to unanimity persisted through the colloquy with the jury, defense counsel requested a partial verdict, and the specter of coercion was low due to the posture of the jury's deliberations, Maryland Rule 4–327(d) provided the trial judge with a reasonable alternative to the declaration of a mistrial. Thus, before a proper finding of manifest necessity for a mistrial could have been made, the trial judge should have inquired into the jury's status of unanimity prior to its discharge. Failure to do so was an abuse of discretion, and retrial on the charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery is barred by double jeopardy.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.**

BATTAGLIA, J., joins judgment only.

Judge BATTAGLIA joins the judgment only.