75 A.3d 371

Carlos **TEIXEIRA**

v.

**STATE** of Maryland.

**No. 0388, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 5, 2013.

Piedad Gomez (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Jessica V. Carter (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, NAZARIAN, RAYMOND G. THIEME, JR., (Retired, Specially Assigned), JJ.

THIEME, J.

One of the questions presented in this appeal is whether a jury can be reconvened after discharge, but before the jury has dispersed. Carlos Teixeira challenges his convictions for armed carjacking, carjacking and associated offenses because he thinks the jury, sitting in the Circuit Court for Baltimore City, rendered inconsistent verdicts that are legally repugnant. The State responds at the outset that because Teixeira's objection below came too late—after the jurors were dismissed from the courtroom-his appellate complaint falls victim to procedural default. The State follows up with the assertion that the disputed verdicts are at most factually inconsistent, and must be permitted to stand as such verdicts have been tolerated in the past by judges in Maryland. For the reasons that follow, we shall hold, first, that Teixeira's challenge to the inconsistent verdicts has been preserved and that the verdicts at issue are not legally inconsistent. We shall therefore affirm in all respects.

### INTRODUCTION

It is unnecessary to recite the underlying facts in any but a summary fashion because for the most part "they [otherwise] do not bear on the issues we are asked to consider." *Fitzpatrick v. Robinson*, 723 F.3d 624, 628 (6th Cir.2013). *See*

*generally Hill v. State*, 418 Md. 62, 66, 12 A.3d 1193 (2011); *Cure v. State*, 195 Md.App. 557, 561, 7 A.3d 145 (2010) (only brief summary necessary), *aff'd on other grounds*, 421 Md. 300, 26 A.3d 899 (2011); *Washington v. State*, 180 Md.App. 458, 461–62 n. 2, 951 A.2d 885 (2008) (recitation of full record unnecessary because no challenge made to sufficiency of evidence).

This case has as its genesis a carjacking and robbery at about 11:00 p.m. on October 3, 2010 on Linnard Street in Baltimore City. Lionel Torrance was in his car—a Crown Victoria—when he was approached by two men. Mr. Torrance said that one of the men, later identified as Teixeira, pointed a handgun at him and demanded money while the second told him to open the trunk of his vehicle. Torrance described the weapon as "an automatic gun," although he was unsure of the exact type. He described hearing the gunman operate the slide mechanism. Torrance gave the gunman $45, left his car and started across the street. When one of the assailants ordered him to "Come here," Torrance fled, hid in an alley and watched as his stolen car drove by with Teixeira at the wheel.

The police were summoned, and Sgt. Warren Stephens spotted Torrance's vehicle about an hour after the carjacking. The car stopped at 3200 North Avenue and parked. Sgt. Stephens stopped some distance away, and parked at a point from which he could observe the Crown Victoria. A man, later identified as Teixeira, was "standing outside the passenger door with the door opened" communicating with another person who was at the wheel. Teixeira and the driver left the Crown Victoria and walked up North Avenue and passed Sgt. Stephens's car. When other patrol officers arrived at the scene, Teixeira fled on foot, leaving his companion behind. Officers soon caught up with Teixeira. No handgun was recovered at that time, but police would later find a "BB caliber 4.6mm Crow 77."

Following a jury trial, Teixeira was convicted of armed carjacking, carjacking, conspiracy to commit armed carjack-

ing, armed robbery, robbery, unauthorized removal of property and both first and second-degree assault. The jury acquitted him of use of a handgun in the commission of a crime of violence and wearing, carrying and transporting a handgun. The trial court handed down consecutive sentences of twenty, ten and ten years respectively for the armed carjacking, armed robbery and conspiracy. The remaining counts were merged.

## DISCUSSION

Asserting that the trial court erred by not directing the jury to resume deliberations, Teixeira maintains that the jury's acquittal of the handgun charges renders inconsistent those guilty verdicts on charges that were based on the use or possession of a dangerous weapon. Although Teixeira claims that his objection to the inconsistent verdicts was "timely," the State disagrees, and posits that Teixeira waited until after the jury had been discharged before voicing his objection.

### Standard of Review

We review de novo the question of whether verdicts are legally inconsistent. This is so because we review the elements of the offense at issue in light of the jury instructions. *See State v. Blackmon*, 208 N.C.App. 397, 702 S.E.2d 833, 837–38 (2010) (noting that majority of North Carolina cases employ de novo standard of review); *State v. Hazel*, 106 Conn.App. 213, 941 A.2d 378, 384 (2008) (resolution of claim of inconsistent verdicts presents question of law subject to plenary review), *cert. denied*, 287 Conn. 903, 947 A.2d 343 (2008). *See also People v. Tucker*, 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617, 619 (1981) (record reviewed only as to jury charge, without consideration as to accuracy of charge). *Cf. United States v. Suarez*, 682 F.3d 1214, 1218 (9th Cir.2012) ("de novo standard of review applies to the legal determination of whether a defendant may upset a guilty verdict because it is inconsistent with an acquittal.") (citation omitted).

## A.

After the jury found Teixeira guilty on all but the weapons counts, the jurors were polled and hearkened. The trial court then excused them:

THE COURT: Members of the jury, on behalf of the parties, the attorneys, and myself, personally, I think [sic] you for your service and attention that you've given to this case. I also want to advise you that you have in front of you your verifications of your service here. Madam Clerk in a few moments will be returning to you your electronic devices. I'm going to ask that you return momentarily to the jury deliberation room so that you can retrieve your personal belongings and Madam Clerk will give you your electronic devices there. Thank you again for your service. Have a good evening.

After the jurors were excused, defense counsel alerted the trial court to his concern about the verdicts:

[DEFENSE COUNSEL]: Can we discuss before the jury leaves, Your Honor?

\*        \*        \*

Because ... it's my understanding and I'm not quite clear about this because it's never happened to me before. But the jury has found Mr. Teixeira not guilty of the handgun charges but they did find him guilty of armed carjacking and robbery with a deadly weapon. I believe these are inconsistent verdicts. I don't believe that he could—that there is—I mean, I don't know what the scenario is, legally, under which they can find that he had no handgun, which is I believe what this verdict is saying.

But at the same time, he was armed during a carjacking and armed with a deadly weapon during a robbery. It's my understanding and I know the law, the inconsistent verdict law is basically not well formed on this, but that I need to raise this while the jury is still available if we can address that somehow with the jury. I mean, as to the inconsistency in the verdict as I see it.

After briefly hearing from both parties, the court directed the clerk to "[h]ave the jury remain" while further argument was presented. At the outset, the prosecutor appeared to agree that the issue was preserved, but that there was some confusion on this point:

[PROSECUTOR]: So, it is now preserved, Your Honor, for a later consideration. I believe it's inappropriate to bring out the jury to have them go back over what was going on in deliberations. Deliberations are at an end.

The trial court found that the verdicts were factually inconsistent, and explained her ruling as follows:

THE COURT: Okay. Thank you. You may both have a seat. First of all, I take note of the verdict sheet in this case. I also take note of the elements of each, of the charges in this case. I note that second—the elements for second-degree assault as well as the elements for first-degree assault. The Defendant was charged with first-degree assault and in order for the Defendant to be convicted of first-degree assault, the State had to prove all of the elements of second-degree assault and also prove that either the Defendant used a firearm to commit the assault or that the Defendant intended to cause serious, physical injury in the commission of the assault.

With respect to the issue of carjacking or at least the charge of carjacking of which the jury found the Defendant guilty, the Defendant was also found guilty of armed carjacking. In order to convict the Defendant of armed carjacking, the State had to prove the elements of carjacking and also had to prove the Defendant committed the carjacking by using a dangerous weapon. A dangerous weapon is an object that is capable of causing death or serious, bodily harm.

With respect to conspiracy, the Defendant was also charged with conspiracy. In order to prove that the Defendant was convicted, the—in order to convict the Defendant of conspiracy, the State had to prove that the Defendant entered into an agreement with at least one other person to

commit the crime of carjacking and that the Defendant entered into the agreement with the intent that carjacking be permitted.

With respect to the issue of robbery and particularly, I'm looking at the elements of armed robbery, robbery with a dangerous weapon, I should say. The Defendant was charged with robbery, with a dangerous weapon. And, in fact, was found guilty by this jury. In order to convict a Defendant of robbery with a dangerous weapon, the State had to prove all of the elements of robbery and also had to prove that the Defendant committed robbery by using a dangerous weapon. Again, a dangerous weapon is an object that is capable of causing death or serious bodily injury. The trial court then addressed the not guilty verdicts.

The two charges that Mr. Teixeira was not found guilty of was the charge of—were the charges of carrying a handgun or concealed or openly with the purposes of injuring or killing another. That charge is, again, carrying a handgun with the purpose of injuring or killing another. In order to convict the Defendant, the State must prove that the Defendant wore, carried, or transported a handgun that was within his reach and available for his immediate use with the deliberate purpose of injuring or killing another person. A handgun was described to this jury by agreement of Counsel, as a pistol, revolver, or other firearm capable of being concealed on or about the person and is designed to fire a bullet by the explosion of gunpowder. The Defendant was found not guilty of that charge.

The Defendant was also found not guilty of the charge of use of a handgun in the commission of a felony or crime of violence. The Defendant, in order to have been convicted of that crime, the State had to prove that the Defendant committed the crime of violence of carjacking and that the Defendant used a handgun under the commission of the carjacking. A handgun again, as agreed by Counsel, was defined to this jury as a pistol, revolver, or other firearm capable of being concealed on or about the person and which is designed to fire a bullet by the explosion of gunpowder.

Use of a handgun means that the Defendant actively employed a handgun. Mere possession of a handgun at or near the crime, without active employment is not sufficient. Although the term use connotes something more than potential use. There need not be the kind that actually produces harm, but only the kind that produces a fear of harm or forces by some means. Such means including brandishing, displaying, and striking with, firing or attempting to fire a handgun in furtherance of the carjacking.

The trial court continued:

The requirements that are—the elements that are required for the use of a handgun in the commission of a felony or crime of violence and the elements that are required for carrying a handgun for the purpose of injuring or killing another, are not the same elements that are required for all of the charges that the Defendant was found guilty of. Particularly, the charges of armed carjacking, carjacking, robbery with a deadly weapon and robbery in first-degree assault.

In addition to that, I take note of the case of *State v. Williams*.[1] In that case, a trial court judge found the Defendant guilty after a bench trial of attempted robbery with a dangerous weapon, assault in the first-degree, and use of a handgun in the commission of a crime of violence and a felony in violation of Section 3–403 and 3–202 of the Criminal Article and 4–204 of the Subtitle. Based on the determination, "That the Defendant had aided and abetted in the crimes, it was inconsistent the Court found for the trial court to have found him not guilty of wear and carry, or transporting a handgun in violation of that section. As one could not use a handgun without possessing it. And as there was no explanation offered as to the inconsistency, vacatur (phonetic) of the convictions was required. As to the convictions, however, for attempted robbery and attempted theft, they did not require vacatur because there

---

1. *State v. Williams*, 397 Md. 172, 916 A.2d 294 (2007) (inconsistent verdicts in bench trial).

was no requirement of proof of handgun use in order to sustain those convictions.

That is exactly the situation that we have here. With respect to armed carjacking, carjacking, robbery with a deadly weapon, first-degree assault. There is no necessity for use of a handgun in order to convict the Defendant. The—Counsel for the Defense argues that the only (inaudible) provided to the Court or through this trial was the bb gun. I cannot go into the mind of the jury and determine that perhaps they believed that that bb gun was, in fact, somehow connected to the Defendant or not."

The trial court then concluded:

Based on my analysis of the verdict sheet, the applicable case law, considering the arguments that have been made by Counsel, I find that the verdict does not rise to a level of a legally inconsistent verdict and the motion that Defense Counsel has made to this court is denied.

### B.

We take up the State's assertion that Teixeira's complaint is not before us because defense counsel did not raise this issue before the jurors were discharged. To address this argument in the context of the court's actions, we consider the Court of Appeals' decision in *Price v. State*, 405 Md. 10, 949 A.2d 619 (2008). The Court in *Price* rewrote Maryland law on inconsistent verdicts, turning the tolerance afforded by Maryland courts for such jury choices on its head. Judge Harrell penned a concurring opinion that places the Court's ruling in its proper context, and also explained how a challenge to such verdicts may fail through procedural default. Judge Harrell warned that the failure to object when the court has an opportunity to remedy the error "constitutes waiver." *Id.* at 42, 949 A.2d 619. The concurring opinion forcefully reiterated that "a defendant must note his or her objection to allegedly inconsistent verdicts prior to the verdicts becoming final and the discharge of the jury." *Id.* at 40, 949 A.2d 619. In *Tate v.*

*State,* 182 Md.App. 114, 957 A.2d 640, *cert. denied,* 406 Md. 747, 962 A.2d 373 (2008), this Court reiterated that message:

Judge Harrell [in his concurring opinion in *Price* ] explained that more frequently than not it is the defendant who is the beneficiary of the jury's merciful inconsistency, and that the defendant should be allowed to enjoy the option of accepting the jury's boon of probably undeserved lenity. What the defendant may not do, however, is to have his cake and eat it too. The concurrence explained:

> *The jury may render a legally inconsistent verdict to show lenity to the defendant. The defendant should not be foreclosed from accepting the jury's lenity* as a result of the holding of the Majority opinion. Nevertheless, *we should not permit the defendant to accept the jury's lenity in the trial court, only to seek a windfall reversal on appeal by arguing that the jury's verdicts are inconsistent.* Accordingly, *a defendant must note his or her objection to* allegedly inconsistent verdicts *prior to the verdicts becoming final and the discharge of the jury. Otherwise, the claim is waived.* "If a defendant claims that a verdict is inconsistent to the point of being self-destructive, *he must present that claim to the circuit court before the jury is discharged; if he does not, he waives the claim.*"

*Tate,* 182 Md.App. at 132, 957 A.2d 640 (quoting *Price v. State,* 405 Md. at 40, 949 A.2d 619) (emphasis in original).

Although Teixeira did not question the verdicts until after the jurors were excused from the courtroom, the trial judge directed the clerk to hold the jury shortly after counsel raised this issue. The venire remained subject to recall and was finally dismissed only after the trial judge heard argument and ruled. On the record before us, we conclude that his question about the propriety of the verdicts was timely. In *Hoffert v. State,* 319 Md. 377, 572 A.2d 536 (1990), the defendant had been charged with attempted first and second degree murder, robbery with a deadly weapon and use of a handgun in the commission of a crime of violence. The jurors were instructed that they had to find Hoffert guilty of one of the

first three charges before they could find him guilty on the handgun charge. The jury foreman announced not guilty verdicts on the first three charges, but did not announce a verdict on the fourth charge—the handgun use count. After a jury poll on the three verdict counts, and after the clerk hearkened the jury only to the first charge, the trial judge informed the venire that its "service in this case is now complete." *Hoffert,* 319 Md. at 381, 572 A.2d 536.

The *Hoffert* trial judge was interrupted by a juror, who reminded him of the fourth charge—the handgun use count. When the judge queried the foreman about that charge, the foreman answered "guilty." This surprise result prompted a recess and research by the court and counsel. Following this interlude, the jury was reassembled, the foreman announced the guilty verdict and a poll was conducted and hearkened to all the verdicts. *Id.,* 319 Md. at 382, 572 A.2d 536. On Hoffert's appeal, the Court of Appeals reversed. Writing for a majority, Judge Orth explained:

> When the jury was polled on the verdicts of not guilty on the first three charges, *see* Md. Rule 4–327(e), and the poll disclosed that the verdicts were unanimous, the verdicts were final. . . . The verdicts were legally proper. They were not contrary to the law and, without more, were in full accord with the judge's instructions which properly reflected the law. Nor were they "ambiguous, *inconsistent,* unresponsive, or otherwise defective." . . . The verdicts stood complete without a verdict on the handgun charge. The guilt stage of the trial was over at that point. The jury had no further function to perform. It had exhausted its power and authority and could not be called upon to exercise additional duties in the case. In short, the case was no longer within the province of the jury. In the circumstances, the State was not entitled to a verdict on the handgun charge. It follows that the judge erred in permitting the jury to return a verdict on the fourth count. It was not a matter of the exercise of judicial discretion. The judge had no discretion to exercise because the verdict on the fourth charge was null and void and of no effect

whatsoever. It certainly could not serve as the basis for the imposition of punishment and the entry of a judgment. *Hoffert v. State*, 319 Md. at 386–87, 572 A.2d 536 (citations and footnote omitted) (emphasis added). In a footnote, Judge Orth pointed out that

When the verdicts of the jury are not complete, and the jury is still under the aegis of the court, the jury may resume its deliberations to resolve the verdicts required to be rendered. For example, if the charges are arson and burglary and the jury returns a verdict only on the arson offense, it may be called upon to return a verdict on the burglary offense. Such circumstances are readily distinguishable from the circumstances here.

*Id.*, 319 Md. at 387 n. 3, 572 A.2d 536. Judge Chasanow dissented, and his following observation is pertinent:

Even if, as the majority concludes, the verdicts on the attempted murder and robbery counts were final, the conviction on the handgun count should still be affirmed. The jury had not yet announced its verdict on one of the counts submitted to it. Until the jury has left the courtroom and dispersed, the judge should be able to allow them to complete their verdict. *Wharton's Criminal Procedure* states:

The mere announcement of the discharge of the jurors does not preclude recalling them if they have not yet dispersed and mingled with the bystanders. Although the decisions are not uniform, it has often been held that, when the jurors have rendered their verdict and have been discharged, but have not yet left the courtroom or the courthouse, the trial judge may recall the order of discharge and reassemble the jurors to amend their verdict as to a matter of form or, in some cases, substance.

4 C. Torcia, *Wharton's Criminal Procedure*, 12th Ed. § 578, at 141 (1976).

*Hoffert v. State*, 319 Md. at 390, 572 A.2d 536 (Chasanow, J., dissenting).

■ On the record before us, we believe that the jury remained, as Judge Orth would say, "under the aegis of the

court" and thus had not lost its separate identity in view of the fact that there was a question whether the verdicts were legally proper. *Cf. Jones v. State,* 173 Md.App. 430, 459, 920 A.2d 1 (2007) (noting that "[o]nce jurors are discharged and *dispersed,* they no longer constitute a jury") (emphasis added) (quoting *Maloney v. State,* 17 Md.App. 609, 626, 304 A.2d 260 (1973), *cert. denied,* 269 Md. 762 (1973)). No evidence of outside influence was presented in the present case. Thus the operative element in determining when and whether a jury's functions are at an end is not when the jury is told it is discharged but when the jury is dispersed, that is, has left the jury box, the court room or the court house, had an opportunity to discuss the case with others and is no longer under the guidance, control and jurisdiction of the court. We conclude that Teixeira may challenge the verdicts as inconsistent.

## C.

In *Price,* the Court re-examined "the Maryland common law principle that inconsistent jury verdicts are normally permissible in criminal jury trials." *Price,* 405 Md. at 12, 949 A.2d 619. Price had been charged, *inter alia,* with three counts of a "drug trafficking crime." *Id.* at 13, 949 A.2d 619. See Md.Code (2002), § 5–621 of the Criminal Law Article. He was also charged with three firearms charges, including a single count of the derivative firearm possession offense in violation of Crim. Law § 5–621(b)(1). The jury acquitted Price of all of the drug trafficking offenses, the two regulated firearm possession counts, and unlawfully carrying or transporting a handgun. Yet the jury also found Price guilty of possession of a firearm during and in relation to a drug trafficking offense, under circumstances constituting a nexus to a drug trafficking crime. *Price,* 405 Md. at 15, 949 A.2d 619. *See* Crim. Law § 5–621(b)(1).

Price's trial counsel moved to strike the firearm possession conviction as inconsistent with the acquittals of the drug trafficking offenses. The trial court denied this request and this Court affirmed on direct appeal. On *certiorari,* the Court of Appeals reversed this Court's approval of the inconsistent

verdicts. The Court acknowledged the historic tolerance of inconsistent verdicts in jury trials, but observed that "numerous exceptions" to the principle tolerating inconsistent verdicts, including recent opinions in both civil and criminal cases, "are circumstances which fully warrant a prospective change in the common law applicable to inconsistent verdicts." *Price*, 405 Md. at 23, 949 A.2d 619 (citations omitted). The Court concluded that "[t]here is no longer any justification for the one remaining situation where inconsistent verdicts are tolerated, namely certain types of inconsistent verdicts by a jury in a criminal trial." *Id.* "Accordingly," the Court ruled, "with regard to the instant case, similarly situated cases on direct appeal where the issue *was preserved,* and verdicts in criminal jury trials rendered after the date of our opinion in this case, inconsistent verdicts shall no longer be allowed." *Price*, 405 Md. at 29, 949 A.2d 619 (emphasis added).

A concurring opinion, agreeing with this "sea change" or clarification of the law of inconsistent verdicts, observed that the "Majority opinion properly notes that 'where the issue was preserved' ... 'inconsistent verdicts shall no longer be allowed.'" *Price*, 405 Md. at 40, 949 A.2d 619 (Harrell, J., concurring). The concurring opinion in *Price* "urged that the Court's opinion should be read as applying only to legally inconsistent verdicts, but not factually inconsistent verdicts." *McNeal v. State,* 426 Md. 455, 465, 44 A.3d 982 (2012). Writing for a unanimous Court in *McNeal,* Judge Harrell emphasized the distinction as set forth in the *Price* concurrence, and the appropriate appellate response:

> The concurring opinion observed that "[t]he feature distinguishing a factually inconsistent verdict from a legally inconsistent verdict is that a factually inconsistent verdict is illogical merely. By contrast, a legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instruction regarding the law." [*Price*, 405 Md. at 35, 949 A.2d 619.] Concluding that appellate courts are especially "ill equipped to determine whether a jury's verdict is illogical factually, or merely 'curious,'" the concurring opinion urged that Maryland should join New York, Florida, Mis-

souri, and Rhode Island which prohibit legally inconsistent verdicts, but allow factually inconsistent verdicts to stand. *Price,* 405 Md. at 36, 949 A.2d at 635 (Harrell, J., concurring) (citing *People v. Tucker,* 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981); *Naumowicz v. State,* 562 So.2d 710 (Fla.Dist.Ct.App.1990); *State v. Flemons,* 144 S.W.3d 877 (Mo.Ct.App.2004); *State v. Arroyo,* 844 A.2d 163 (R.I. 2004)). The *Price* concurring opinion cautioned also reviewing courts against engaging in an inquiry that may mistake a curious verdict for a legally inconsistent verdict. *Price,* 405 Md. at 36, 949 A.2d at 635 (Harrell, J., concurring).

*McNeal v. State,* 426 Md. at 465–66, 44 A.3d 982. The *Price* concurrence set the foundation for the Court's decision in *McNeal:*

Today, in adopting the urgings in the *Price* concurring opinion as to factually inconsistent verdicts, we reaffirm the historic role of the jury as the sole fact-finding body in a criminal jury trial. In the case at bar, the jury was instructed properly that they alone had the authority to decide the facts, but must follow the judge's instructions on the law. This Court has long held that a trial judge must not interfere or influence the jury's fact-finding task. *See Butler v. State,* 392 Md. 169, 183–84, 896 A.2d 359, 367–68 (2006) (noting the many ways a trial judge could influence impermissibly the jury's fact-finding mission); *Gore v. State,* 309 Md. 203, 210–11, 522 A.2d 1338, 1341 (1987) (reversing a conviction after a trial court, in its jury instructions, commented on the sufficiency of the evidence in a way that may have influenced the jurors); *Dempsey v. State,* 277 Md. 134, 149, 355 A.2d 455, 463 (1976) (warning that because of their position of authority within the courtroom, trial judges should not comment on the "existence or not of any fact, which should be left to the finding of the jury....").

*McNeal v. State,* 426 Md. at 472, 44 A.3d 982.

The issue becomes whether the verdicts in the case before us were legally or factually inconsistent. In *McNeal,* the Court instructed that a "legally inconsistent verdict is one

where the jury acts contrary to the instructions of the trial judge with regard to the proper application of the law. Verdicts where a defendant is convicted of one charge, but acquitted of another charge that is an essential element of the first charge, are inconsistent as a matter of law." *McNeal,* 426 Md. at 458, 44 A.3d 982 (citing *Price,* 405 Md. at 35, 949 A.2d 619 (Harrell, J., concurring)). In an opinion that is cited with approval by the *McNeal* Court, the Court of Appeals of New York explained that

> "a verdict as to a particular count shall be set aside" as repugnant [inconsistent] "only when it is inherently inconsistent when viewed in light of the elements of each crime as charged to the jury" without regard to the accuracy of those instructions.[2] The underlying purpose of this rule is to ensure that an individual is not convicted of "a crime on which the jury has actually found that the defendant did not commit an essential element, whether it be one element or all." A person cannot be convicted of a crime if a jury has necessarily decided that one of the essential elements was not proven beyond a reasonable doubt.

*People v. Muhammad,* 17 N.Y.3d 532, 935 N.Y.S.2d 526, 959 N.E.2d 463, 467 (2011) (citations omitted).

### D.

■ The jurors did not render legally inconsistent verdicts in the case before us. Section 3–405(b) of the Criminal Law Article prohibits carjacking. Md.Code (2002, 2012 Repl. Vol.), § 3–405(b) of the Criminal Law Article. The elements of carjacking have been set forth as follows:

> Carjacking requires that (1) the defendant obtain unauthorized possession or control of a motor vehicle; (2) that the motor vehicle was in the actual possession of another

---

2. *Compare McNeal v. State,* 426 Md. 455, 466, 44 A.3d 982 (2012) (observing that "a legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instruction regarding the law.") (quoting *Price v. State,* 405 Md. 10, 35, 949 A.2d 619 (2008) (Harrell, J., concurring)).

person at that time; and (3) that the defendant used force or violence against that person, or put that person in fear through intimidation or threat of force or violence, in order to obtain the motor vehicle. Maryland Criminal Pattern Jury Instruction MPJI 4:28A: Carjacking. An essential element of carjacking, unlike robbery, is the taking of a specific type of property, i.e. a motor vehicle. Unlike robbery, the carjacking statute requires no movement or asportation, only unauthorized possession or control. *Harris v. State*, 353 Md. 596, 614, 728 A.2d 180 (1999). Armed carjacking requires the State to prove, in addition, that the defendant "employ or display a dangerous weapon during the commission of the carjacking." Crim. Law § 3–405(c).

The offense of robbery with a dangerous weapon is proscribed by Crim. Law § 3–403(a)(1). *See Maryland Criminal Pattern Jury Instruction* MPJI 4:28.1–Robbery with a Dangerous Weapon. The "essential elements of the crime of robbery are the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear." *Conyers v. State*, 345 Md. 525, 558, 693 A.2d 781 (1997) (citation and internal quotation marks omitted). "Robbery with a deadly weapon is not a separate substantive offense, but if the State can prove that a defendant used a deadly weapon during the commission of a robbery, the defendant is subject to harsher penalties." *Id.*

Neither offense requires the use of a "handgun." As in *McNeal*, "[t]here is no lesser included offense or predicate crime involved in [Teixeira's] inconsistent verdicts." *McNeal*, 426 Md. at 472, 44 A.3d 982. What we are left with are verdicts that are factually inconsistent, for reasons known but to the jury.[3] The venire could have decided that, as to the wearing or carrying charge, Teixeira did not do so "with the

---

**3.** The trial court noted as much in her ruling. Mindful that a bb gun had been recovered from a rooftop near the route Teixeira had traveled in an attempt to escape, the court declined an attempt to second guess the jurors' treatment of the evidence.

purpose of injuring or killing another." This element is not a predicate either to the armed robbery or armed carjacking charges. As to the handgun use charge, the jurors could well have decided that Teixeira had not employed a handgun that met the definition of "firearm," but instead another dangerous weapon or even an instrument that was not "capable of being concealed on or about the person and which is designed to fire a bullet by the explosion of gunpowder." *See* Crim. Law § 4–204(a)(1)(i). Use of a handgun that meets the statutory criteria is a sufficient, but not necessary predicate for a conviction of either armed carjacking or armed robbery.[4]

Teixeira urges that the character of the offense, as charged in the indictment, should control. He further emphasizes that the prosecutor's focus was on the use of a handgun. He also points out the State's dismissal of the idea that the bb gun,

---

4. The trial court's instructions on armed carjacking and robbery with a deadly weapon do not require the use of a firearm. The court instructed the jury on these charges as follows:

> The Defendant is also charged with the crime of armed carjacking. In order to convict the Defendant of armed carjacking, the State must prove all of the elements of carjacking and must also prove that the Defendant committed the carjacking by using a dangerous weapon. A dangerous weapon is an object that is capable of causing death or serious bodily harm.

*   *   *

> . The Defendant is also charged with the crime of robbery with a deadly weapon. In order to convict the Defendant of robbery with a dangerous weapon, the State must prove all of the elements of robbery and must also prove that the Defendant committed the robbery by using a dangerous weapon. A dangerous weapon is an object that is capable of causing death or serious bodily harm.

As to the first-degree assault charge, the trial judge instructed the jury on the two ways of committing that offense:

> In order to convict the Defendant of first-degree assault, the State must prove all of the elements of second-degree assault and must also prove that the Defendant used a firearm to commit assault *or* the Defendant intended to cause serious, physical injury in the commission of the assault.

(Emphasis added). *See* Md.Code (2002, 2010 Supp.), § 3–202(a)(1) of the Criminal Law Article ("A person may not intentionally cause or attempt to cause serious physical injury to another."). *Compare* Crim. Law § 3–202(a)(2) ("A person may not commit an assault with a firearm[.]").

that had been recovered from a nearby rooftop, may have been the weapon of choice. We believe that these arguments miss the mark. To be sure, the specific facts stated in the indictment may demonstrate the conduct that forms the basis of the charge. Any manner by which the jury strays from the prosecution's theory of the case, as presented in the indictment, leads us not to legal inconsistency but to factual anomalies.

As aptly put by the New York Court of Appeals, "our repugnancy analysis requires that we review the elements of the offenses as charged to the jury without regard to the proof that was actually presented at trial[.]" *People v. Muhammad,* 935 N.Y.S.2d 526, 959 N.E.2d at 470. *See McNeal,* 426 Md. at 467, 44 A.3d 982 (citing *Muhammad*). This is so because the jury instruction tracks the essence of the statute and not of the indictment. In the final analysis, provided the jury did not acquit Teixeira on a charge that was a predicate for the first degree assault, armed carjacking and armed robbery, we are faced with verdicts that are factually inconsistent. The jury's choices in this regard, while a source of wonder, are beyond appellate scrutiny.

**JUDGMENTS AFFIRMED. APPELLANT TO PAY COSTS.**