*Roland E. Simms v. State of Maryland*, No. 410, September Term 2018.  Opinion by Wright, Alexander.


**VERDICTS & JUDGMENTS – PARTIAL VERDICTS; MERGER**


Holding #1: Under Md. Rule 4-327(d), circuit courts are given the discretion to accept partial verdicts.  All jurors must unanimously and finally agree as to any count for which a verdict is returned.  However, there is no requirement that the parties to a case agree to the taking of a partial verdict before such a verdict accepted.

Holding #2: Under the rule of lenity, a conviction for wearing, carrying, or transporting a handgun must merge with a conviction for use of a firearm, and a conviction for violation of a protective order must merge with a conviction for first degree assault.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 410

September Term, 2018

_____

ROLAND E. SIMMS

v.

STATE OF MARYLAND

_____

Wright,
Kehoe,
Raker, Irma S.,
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Wright, J.
_____

Filed:  May 1, 2019



 Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Appellant, Roland E. Simms, was indicted in the Circuit Court for Prince George's County and charged with attempted first-degree murder, attempted second-degree murder and related counts. Following a jury trial, he was acquitted of the two attempted murder counts and convicted of: first and second-degree assault; reckless endangerment; use of a firearm in the commission of a crime of violence; illegal possession of a firearm; wearing, carrying, or transporting a handgun; and violation of a protective order. Appellant was sentenced to an aggregate sentence of 50 years with all but 30 years suspended in favor of five years' supervised probation, plus credit for time served, as follows: 25 years, with all but 20 suspended, for first degree assault; 20 years consecutive, with all but five suspended, for use of a firearm; five years consecutive for illegal possession of a regulated firearm; three years concurrent for wearing, carrying, or transporting a handgun; and 90 days concurrent for violating a protective order. Appellant timely appealed and presents the following questions for our review:

1. Did the trial court err when it failed to consider taking a partial verdict on the ground that in order to take a partial verdict, both sides must agree?

2. Did the court err in imposing separate sentences for first degree assault, use of a firearm in the commission of a crime of violence, illegal possession of a firearm, wearing, carrying, or transporting a handgun, and violation of a protective order?

For the following reasons, we shall vacate appellant's sentences for wearing, carrying, or transporting a firearm and violating a protective order and, otherwise, shall affirm.

**BACKGROUND**

Although we have reviewed the record as a whole, "[i]t is unnecessary to recite the underlying facts in any but a summary fashion because for the most part they [otherwise] do not bear on the issues we are asked to consider." *Teixeira v. State*, 213 Md. App. 664, 666 (2013) (citations and quotations omitted); *accord Kennedy v. State*, 436 Md. 686, 688 (2014). Appellant was charged with shooting Christina Warrick, the mother of his three children, at a bus stop located in Oxon Hill, Maryland, on the morning of January 24, 2017. Warrick survived and testified against appellant at trial. She informed the jury that she was standing at a bus stop with three of her daughters when appellant approached her with "the look of death on his face," stated "bitch, you tell him everything," and then punched her in the face.

Warrick told her daughters to run and tried to fight back, but appellant pushed her to the ground and pulled out a handgun. He then fired one shot at Warrick's face, however, Warrick turned her head and the shot only grazed her nose. Warrick managed to get up off the ground momentarily, but appellant pushed her back down to the ground and fired another shot and that second shot struck Warrick in the chest.

Warrick also testified that she previously had obtained a final protective order against appellant on August 8, 2016. The protective order was good for one year and required that appellant have no contact with Warrick or her children. Warrick's account of the shooting was corroborated by her daughters, A.S., S.W., and A.W., as well as Koffi Soedje, who were all present at the bus stop and witnessed the shooting.

2

We shall include additional detail in the following discussion.

## DISCUSSION

## I.

Appellant contends that the circuit court erred by not considering taking a partial verdict because it thought both sides had to agree in order to do so. The State responds that appellant waived this issue by acquiescing to the court's decision and foregoing any suggestion of a partial verdict in lieu of a requested modified *Allen* charge.[1] The State also argues the court properly exercised its discretion on the merits of the original request for a partial verdict.

After deliberations began, the jury sent out several notes seeking clarification about the elements of the charged offenses.[2] The jury then sent out a note, which read:

---

[1] The term "*Allen* charge" or "instruction" refers to "a United States Supreme Court opinion 'approv[ing] the use of an instruction in which the jury was specifically asked to conciliate their differences and reach a verdict.'" *Nash v. State*, 439 Md. 53, 90-91 (2014) (quoting *Kelly v. State*, 270 Md. 139, 140 n.1 (1973)) (citing *Allen v. United States*, 164 U.S. 492 (1896)), *cert. denied*, 135 S. Ct. 284 (2014). While the original *Allen* instruction is disfavored, a court has discretion to give a modified version, when applicable, that closely follows the pattern instruction concerning a jury's duty to deliberate. *Nash*, 439 Md. at 91 (citing MCPJI 2:01).

[2] The jury's notes are included with the record on appeal, albeit not in the proper sequence as provided in the transcript. Notably, the record does not reveal the time of day when the jury notes were received. Further, appellant's claim only concerns the notes that inform the court of the jury's initial inability to reach a unanimous verdict during deliberations. Solely for the sake of completeness, one of the other jury notes asked, verbatim: "If you agree or disagree of use of a firearm in the first degree or second degree of a handgun in the commission of a crime of violence does it have to apply? Clarification is needed . . . ." After the court responded by asking the jury to reword that question, the jury sent out a note indicating that "We no longer need clarity on this question." The other jury note included in the record asked: "Does [sic] all qualifications have to apply for charges to reach a verdict." When the court, with the approval of the

3

"We are not able to reach a unanimous decision on one charge yet." This note was addressed in court as follows:

> THE COURT: So what do you want me to say? You must keep deliberating, correct? What other answer is there? I'm not taking a partial verdict. I'm not letting them go home when they only went out at – what was that? 1:30?
>
> THE DEPUTY CLERK: 1:30, 1:45.
>
> THE COURT: It hasn't even been – unless you think there's another option.
>
> [DEFENSE COUNSEL]: We could talk about taking a partial verdict.
>
> [PROSECUTOR]: I'd prefer further deliberations. Perhaps the *Allen* charge, and then after – you know.
>
> THE COURT: Not an *Allen* charge now.
>
> [PROSECUTOR]: I'm fine with continue deliberating.
>
> THE COURT: Please continue deliberating.
>
> [PROSECUTOR]: Because the *Allen* charge, I mean, we all agree that it doesn't say much.
>
> THE COURT: So do you object to me telling them please continue deliberating?
>
> [DEFENSE COUNSEL]: Might as well. I think it says only one is left.
>
> [PROSECUTOR]: That's the same reading that I have.

---

parties, responded by asking what the jury meant by "qualifications," the jury asked "Do all bullet points under the charges have to be met to reach a complete verdict?" The court, as approved by the parties, asked for clarification of which charges were of concern, and the jury indicated "MPJI-Cr 4:17.13," referring to the instruction for attempted first-degree and second-degree murder. With the approval of the parties, the court replied to the original query on this note by answering: "Yes."

(Whereupon, the Court and counsel signed the Court's response to the jury's note.)

THE COURT:  Your signature is fine.  What else?

[DEFENSE COUNSEL]:  I don't want it to be imputed that I'm agreeing. That's all.

THE COURT:  It does mean you're agreeing.  You object to that?  Because I wouldn't have written it down if you were objecting to my saying, "Please continue to deliberate."

[DEFENSE COUNSEL]:  Okay.

THE COURT:  If they don't deliberate and they don't agree – in order to take a partial verdict, both sides must agree.  They are not agreeing to it now.  The only other option is to continue deliberating, because I am not going to declare a mistrial.

[DEFENSE COUNSEL]:  Okay.

THE COURT:  What else is there?

[DEFENSE COUNSEL]:  All right.

THE COURT:  You know that they have to agree.

[DEFENSE COUNSEL]:  I know that we all have to agree.

THE COURT:  Right.

[DEFENSE COUNSEL]:  That's true.  And if I request a mistrial at this point?

THE COURT:  I would not grant it.  It's way too early.  I'll make them come back and stay all day tomorrow before I do that.

The circuit court then wrote on the jury note: "Please continue to deliberate."  The note was signed by the court and counsel for both parties.  The jury then sent a short note

5

asking for a brief recess and requesting water. The court granted both requests after a discussion on the record.

After that short break, the circuit court reconvened the parties and informed them that it was going to direct the bailiff to ask the jurors if they wanted to keep deliberating or go home. Although defense counsel proposed a sort of modified *Allen* charge, that apparently differed from the pattern instructions, neither party objected to the court's chosen course of action.[3] The jurors then responded, with 5 jurors indicating they wanted to stay and 7 jurors indicating they wanted to go home. Both parties agreed that the jury should stay. After defense counsel queried whether the court should give the *Allen* instruction, the court replied, "it's not time for an *Allen* charge. Absolutely not. That would be tomorrow if anything." The court then wrote a note, which was agreed to and signed by both attorneys instructing the jury, to "[k]eep [d]eliberating."

However, as this response was being sent to the jury room, the bailiff informed the court that the jury sent out another note, which read: "If we can't come to a consensus, what's next?" The following then ensued:

> THE COURT: All right. How do you want me to respond to this note? State first.
>
> [PROSECUTOR]: I think it's the response that you wrote down on here, on the note that just went back, which is keep deliberating. Should we end deliberations today without a verdict? I think the *Allen* charge would be appropriate to begin tomorrow morning as opposed to giving it this evening.
>
> THE COURT: I'll hear from you.

---

[3] Defense counsel's proposed instruction, which he designated as an "anti-*Allen* charge," does not appear to be included in the record.

[DEFENSE COUNSEL]:  Well, my overriding concern is that the jurors don't feel as though it is required for people to start changing votes to reach unanimity.  That's why I proposed –

THE COURT:  We have no idea what the discussions are back there.

[DEFENSE COUNSEL]:  Well, we have an idea that they are not agreeing.

THE COURT:  As to one.

[DEFENSE COUNSEL]:  They've sent one note saying that they can't agree.  And now, this one is saying, what are we to do if we can't reach a consensus?  What's next?

THE COURT:  There is no next.  They have to keep deliberating until I give the *Allen* charge.  I agree with [the prosecutor].  It's not appropriate to give it at this time and send it back at quarter to 7:00.  No.  It makes no sense to do it now.

[DEFENSE COUNSEL]:  But I am not asking for an *Allen* charge.  I'm asking for a very specific instruction.

THE COURT:  I will give nothing but the *Allen* charge because Maryland law instructs me to give the *Allen* charge, which is essentially the same thing you're asking.  I wouldn't give this until tomorrow, but I won't give it at all.  I'm going to put that on the record.  That's not happening. No.  I will give this *Allen* charge because it's clear by Maryland law.

[DEFENSE COUNSEL]:  I'm not asking for that.

THE COURT:  Well, you don't want this now?

[DEFENSE COUNSEL]: (Shakes head.)

THE COURT:  So then I have to say to them, "Keep deliberating until." I'll give them again until 7:30.  I'll give them another 45 minutes.  It's way too early.  They didn't start until 1:40.  It's not even a second day of deliberations, so I will not do it.  No.

[DEFENSE COUNSEL]:  Okay.
THE COURT:  All right.  Keep deliberating.

7

The circuit court then sent a response to the jury instructing them to, "Keep deliberating," the court and counsel for both parties signed the response. Soon after, the jury informed the court "We've reached a verdict."

On appeal, the State's initial response to appellant's argument is that he waived this issue. Maryland's appellate courts ordinarily will not consider "any issue 'unless it plainly appears by the record to have been raised in or decided by the trial court[.]'" *King v. State*, 434 Md. 472, 479 (2013) (quoting Md. Rule 8-131(a)). Further, where a party acquiesces in a court's ruling, there is no basis for appeal from that ruling. *See Grandison v. State*, 305 Md. 685, 765 (1986) ("By dropping the subject and never again raising it, [appellant] waived his right to appellate review[.]"), *cert. denied*, 479 U.S. 873 (1986). As the Court of Appeals has further explained: "[t]he doctrine of acquiescence -- or waiver -- is that 'a *voluntary* act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review.'" *Exxon Mobil Corp. v. Ford*, 433 Md. 426, 463 (2013) (citations and quotations omitted); *see also Gilliam v. State*, 331 Md. 651, 691 (1993) ("As Gilliam did not object to the course of action proposed by the prosecution and taken by the court, and apparently indicated his agreement with it, he cannot now be heard to complain that the trial court's action was wrong").

Here, when the jury submitted the note indicating that they had not reached a unanimous verdict on one count, the court was the first to mention a partial verdict, stating "I'm not taking a partial verdict." Defense counsel responded, "[w]e could talk about taking a partial verdict." The parties moved on, without significant discussion, by

8

considering a response that told the jury to keep deliberating. After defense counsel initially objected to that instruction, the court declared that it would not give the supplemental instruction to keep deliberating unless counsel agreed.

It was at this point that the circuit court stated, "[i]f they don't deliberate and they don't agree – in order to take a partial verdict, both sides must agree. They are not agreeing to it now." The court also stated that "[y]ou know that they have to agree." Although it appears that the court was referring to the jury when it stated that "they" must agree, defense counsel added, "I know that we all have to agree." The court agreed with this statement as well. Defense counsel then queried, "And if I request a mistrial at this point?" The court responded, and concluded this discussion, by stating, "I would not grant it. It's way too early. I'll make them come back and stay all day tomorrow before I do that." Throughout the remainder of the discussions over the subsequent jury notes, the parties never again mentioned a partial verdict and instead focused on whether or not to give a "modified-*Allen* instruction."

We are persuaded by the State's waiver argument. The possibility, or lack thereof, of a partial verdict was first broached by the circuit court. When defense counsel suggested the issue could be further discussed, there was no significant discussion of that alternative. Instead, the focus was on whether the court should tell the jury to keep deliberating. Indeed, when the court indicated that a partial verdict was not an option at this point, defense counsel agreed, stating "I know that we all have to agree." Considered along with the discussions about subsequent jury notes, which lacked any further mention of a partial verdict, we conclude that defense counsel acquiesced to the court's decision.

9

Even were the issue preserved, we are unable to conclude that the circuit court erred or abused its discretion. A criminal defendant is guaranteed the right to an impartial jury by the Sixth Amendment, as applied to the States through the Fourteenth Amendment and Article 21 of the Maryland Declaration of Rights. *See Attorney Grievance Comm'n of Maryland v. Gansler*, 377 Md. 656, 674-75 (2003) (citations omitted). For a jury's verdict in a criminal case tried to be final, "the jury must intentionally render a unanimous verdict." *Caldwell v. State*, 164 Md. App. 612 (2005) (citations omitted); *see also* Md. Rule 4-327(a) ("The verdict of a jury shall be unanimous[.]"). "A verdict is defective for lack of unanimity when it is unclear whether all of the jurors have agreed to it." *Caldwell*, 164 Md. App. at 636 (citing *Lattisaw v. State*, 329 Md. 339, 346-47 (1993)). Whether the verdict itself satisfies the unanimous consent "requirement is a mixed question of law and fact, which we review *de novo*[.]" *Id*. at 643.

The Maryland Rules, however, provide for judicial discretion in the acceptance of partial verdicts:

> When there are two or more counts, the jury may return a verdict with respect to a count as to which it has agreed, and any count as to which the jury cannot agree may be tried again.

Md. Rule 4-327(d); *see also State v. Fennell*, 431 Md. 500, 520, 524 (2013) (recognizing that partial verdicts are allowed in Maryland under certain circumstances and agreeing "that the partial verdict inquiry is largely an exercise of the trial judge's discretion").

Two cases inform our analysis. In *Caldwell,* after the jurors had been deliberating for some time, the circuit court was advised that the courthouse would be closing at 1:00

10

p.m. because of an impending hurricane. *Caldwell*, 164 Md. App. at 624. The jury was returned to the courtroom and informed that the courthouse was closing and was unlikely to be open the next day, which was a Friday. *Id.* One of the jurors was unable to return to the courthouse the following Monday, when the courthouse would reopen, and the defendant was unwilling to proceed with an eleven-person jury. *Id.* at 624-25. The circuit court asked the foreperson if the jury had reached an agreement on any of the counts. *Id.* at 625-26. When the foreperson indicated that the jury had reached a unanimous agreement on "every count but one," the court decided, over defense counsel's objection, to take verdicts on those counts. *Id.* at 626-27. The circuit court acknowledged that the jury "possibly could" reach verdicts on the undecided counts, but that it would declare a mistrial on those remaining counts due to the circumstances. *Id.* at 627.

On appeal, Caldwell claimed that the circuit court erred in accepting partial verdicts on tentative votes that were not yet final and in forcing the verdicts, denying him his right to an impartial jury. *Caldwell*, 164 Md. App. at 633. This Court stated the determinative issue was "whether, when the jurors ceased their deliberation, upon being interrupted and called into the courtroom, they had reached a final agreement on the counts on which the court then accepted verdicts." *Id.* at 635.

After considering cases from other jurisdictions, and the requirement that a verdict be supported by unanimous consent, this Court concluded:

> The cases we have discussed teach that, to satisfy the unanimous consent
> requirement, a verdict must be unambiguous and unconditional and must be

11

final - in the sense of not being provisional or tentative and, to the contrary, being intended as the last resolution of the issue and not subject to change in further deliberation. A verdict that is tentative, not being by unanimous consent, is defective and not valid. In deciding whether to accept a partial verdict, a trial judge must guard against the danger of transforming a provisional decision into a final verdict. Just as when the total circumstances disclose an ambiguity or qualification in a verdict, when they suggest that the jury has made a tentative decision, the court must not accept the verdict. It should inquire into the jury's intention *vel non* that the verdict be final, if such inquiry can be done non-coercively; return the jury for further deliberation; or, if that is not possible and there is manifest necessity, declare a mistrial. Doubt must be resolved in favor of the defendant's constitutional right to a verdict by unanimous consent.

*Caldwell*, 164 Md. App. at 642-43.

We further concluded that in Caldwell's case, "the circumstances surrounding the partial verdicts indicated that they were tentative votes the jurors did not intend to be final, irrevocable verdicts." *Caldwell*, 164 Md. App. at 643. In support of that conclusion, we noted that "[t]he emergency closure of the courthouse, compounded by one juror's inability to return for deliberations the following Monday, disrupted and derailed the deliberations midstream, bringing them to an abrupt conclusion." *Id.* As a result, we held that the partial verdicts "were defective, because they were not final decisions and therefore did not meet the requirement of unanimous consent." *Id.* at 646-47.

In *State v. Fennell*, after approximately three hours of deliberations, the jury informed the circuit court, *via* an "unsolicited, completed verdict sheet," that it had voted unanimously to acquit Fennell of three charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery, but was unable to agree on two charges of robbery and second-degree assault. *Fennell*, 431 Md. at 505. After

12

consulting with counsel, and at defense counsel's request, the trial court instructed the jury to "[p]lease continue to deliberate regarding the counts as to which you are undecided." *Id*. at 508. A half hour later, after the court called the jury into the courtroom, the foreperson informed the court that "there's a clear division on the amount of evidence, and how you read the evidence." *Id*. at 509. Defense counsel asked the judge to take a partial verdict on the counts where the jury was unanimous in their decision. *Id*. at 510. After the prosecutor noted an objection, the court declined to take a partial verdict, and instead declared a mistrial as to all counts. *Id*.

Fennell then filed a "Motion to Bar Retrial Due to Double Jeopardy" as to the three counts where the jury indicated they had unanimously voted for acquittal. *Fennell*, 431 Md. at 510-11. Fennell agreed that he consented to be retried on the remaining two charges. *Id*. at 511. The motions court ultimately denied the motion to bar retrial. *Id*.

This Court reversed, concluding that the trial court did not consider reasonable alternatives, and that no manifest necessity existed for the mistrial. *Fennell*, 431 Md. at 511-12. After granting the State's petition for writ of *certiorari*, the Court of Appeals affirmed this Court's judgment. *Id*. at 527. Although the Court of Appeals recognized that "the mere theoretical availability of partial verdicts does not necessitate a further inquiry by the trial court where, for example, no party has requested a partial verdict be taken or the jury does not indicate that it has reached one[.]" *id*., it went on to state that, "[t]his does not mean . . . that the trial judge is not *permitted* to inquire of a jury as to the possibility of a partial verdict where it has not been indicated by the jury or requested by counsel -- rather, it remains within the court's discretion to do so." *Id*. The Court further

13

observed:

> Where, however, the jury indicates to the court that unanimity was achieved, at some point, on one or more counts, [Md.] Rule 4-327(d) points the way for a trial judge to a reasonable alternative to the declaration of a mistrial. Thus, prior to declaring a mistrial without consent on those counts, the trial judge generally should take steps to determine that genuine deadlock exists as to those counts.

*Id.* at 523.

> The Court concluded:

> Viewing the record as a whole, however, we conclude that the jury's unsolicited submission of the completed verdict sheet, the trial judge's subsequent instructions, and the ultimate colloquy between the jury foreperson and the trial court reveals an ambiguity as to the jury's intent and resulting deadlock that was never resolved satisfactorily by the trial court. The jury's delivery to the court of the verdict sheet indicated facially that the jury agreed unanimously to acquit the defendant on the charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery, but was deadlocked as to the remaining two charges.

*Id.* at 524.

Because the reason for the circuit court's denial of the request for a partial verdict

was "unclear," the Court then held:

> Because the trial judge was on notice that the jury may have reached a partial verdict, an ambiguity as to unanimity persisted through the colloquy with the jury, defense counsel requested a partial verdict, and the specter of coercion was low due to the posture of the jury's deliberations, [Md.] Rule 4-327(d) provided the trial judge with a reasonable alternative to the declaration of a mistrial. Thus, before a proper finding of manifest necessity for a mistrial could have been made, the trial judge should have inquired into the jury's status of unanimity prior to its discharge. Failure to do so was an abuse of discretion, and retrial on the charges of first degree assault, conspiracy to commit first degree assault, and conspiracy to commit robbery is barred by double jeopardy.

*Id.* at 526.

14

*Caldwell* teaches that all jurors must agree to the verdict, or parts thereof in case of a partial verdict, to satisfy the unanimity requirement. *Fennell* adds to that lesson by observing, *inter alia*, that a trial court may consider requests for a partial verdict when made by one party. *Id.* at 522. *Fennell* also instructs that the decision whether to accept a partial verdict is a matter of trial court discretion. *Id.* at 522-24. Thus, the circuit court in this case was correct when it observed that the jury must unanimously agree to a partial verdict. However, to the extent that the court's comments in this case required that both appellant and the State agree before it could take a partial verdict, the court was incorrect.

It is for this reason that appellant insists that the circuit court applied a "uniform rule," thereby failing to exercise discretion. Accordingly, appellant argues that the court's failure to exercise discretion amounted to an abuse of discretion. *See 101 Geneva LLC v. Wynn*, 435 Md. 233, 241 (2013) ("It is well settled that a trial judge who encounters a matter that falls within the realm of judicial discretion *must* exercise his or her discretion in ruling on the matter.") (emphasis in original) (internal quotations and citations omitted); *Gray v. State*, 368 Md. 529, 565 (2002) ("[O]ur cases hold that the actual failure to exercise discretion is an abuse of discretion").

We are not persuaded on this point by appellant. Apart from appellant's apparent waiver of the issue, the record reveals that the circuit court never indicated that it would not consider a partial verdict, or a mistrial for that matter. Instead, the court merely stated that it would not consider a partial verdict that early in the jury's deliberations. Indeed, when the additional note came from the jury asking what they should do if they still could not reach a consensus, notably without any indication as before as to whether

15

they disagreed on just one count or all of them, appellant did not mention the possible remedy of a partial verdict. Instead, the colloquy focused on whether and when to give a version of the "modified-*Allen* instruction." Moreover, the jury's verdict in this case was unanimous and final, and there is no indication that it was "ambiguous, inconsistent, unresponsive, or otherwise defective" in any way. *Lattisaw*, 329 Md. at 345 (internal quotation and citation omitted). Under the facts of this case, we conclude that discretion was exercised, and that the circuit court did not abuse its discretion concerning this issue.

## II.

Appellant next asserts that he was illegally sentenced for wearing, carrying, or transporting a handgun, and for violation of a protective order. Appellant's position is that wearing, carrying, or transporting a handgun merges with use of a firearm, and that violation of a protective order merges with either first degree assault or illegal possession of a firearm. The State agrees, as do we.

Merging convictions for purposes of sentencing derives from the double jeopardy prohibition of the Fifth Amendment and Maryland common law. *Brooks v. State*, 439 Md. 698, 737 (2014). "Maryland recognizes three grounds for merging a defendant's convictions: (1) the required evidence test; (2) the rule of lenity; and (3) 'the principle of fundamental fairness.'" *Carroll v. State*, 428 Md. 679, 693-94 (2012) (quoting *Monoker v. State*, 321 Md. 214, 222-23 (1990)); *see also Pair v. State*, 202 Md. App. 617, 625 (2011) (review of court's decision regarding merger pursuant to the "required evidence" test or "the rule of lenity" is decided "as a matter of law."). An appellate court is afforded the authority to review an allegedly illegal sentence notwithstanding a failure to

16

object to the same at trial.  *Montgomery v. State*, 206 Md. App. 357, 410 (2012) (citation omitted), *cert. denied*, 429 Md. 83 (2012); *see also* Md. Rule 4-345(a) ("The court may correct an illegal sentence at any time.").

"Under the rule of lenity, a court confronted with an otherwise unresolvable ambiguity in a criminal statute that allows for two possible interpretations of the statute will opt for the construction that favors the defendant." *Bellard v. State*, 452 Md. 467, 502 (2017) (quoting *Oglesby v. State*, 441 Md. 673, 681 (2015)); *see also Alexis v. State*, 437 Md. 457, 484-85 (2014) ("The rule of lenity is a common law doctrine that directs courts to construe ambiguous criminal statutes in favor of criminal defendants.").  Stated another way, "[i]f the intent of the legislature to impose separate punishments for multiple convictions arising out of the same conduct or transaction is unclear, then the rule of lenity generally precludes the imposition of separate sentences." *Paige v. State*, 222 Md. App. 190, 207 (2015); *see also Marquardt v. State*, 164 Md. App. 95, 149 (2005) (concluding that, under the rule of lenity, any "doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transaction will be resolved against turning a single transaction into multiple offenses.") (quoting *Williams v. State*, 323 Md. 312, 321 (1991)), *cert. denied*, 390 Md. 91 (2005).

Maryland appellate courts have clearly held, under the rule of lenity, that "when convictions for use of a handgun in the commission of a crime of violence, and wearing, carrying, or transporting a handgun are based upon the same acts, separate sentences for those convictions will not stand." *Holmes v. State*, 209 Md. App. 427, 456 (2013) (citing *Wilkens v. State*, 343 Md. 444, 446-47 (1996), *Hunt v. State*, 312 Md. 494, 510 (1988)),

17

*cert. denied*, 431 Md. 445 (2013). There is no dispute in this case that the convictions were based on the same act, thus we shall vacate appellant's sentence for wearing, carrying, or transporting a handgun.

As for whether violation of a protective order must merge with the sentence for first-degree assault, there does not appear to be a case directly on point. However, in *Quansah v. State*, 207 Md. App. 636, 640 (2012), *cert. denied*, 430 Md. 13 (2013), this Court held that, under the rule of lenity, the "sentence for violating a peace order must be merged into [the] sentence for second-degree assault because both convictions may have been based on a single act." *See* Md. Code (1973, 2013 Repl. Vol.) Courts & Judicial Proceedings Article ("CJP") § 3-1508 (establishing the penalties for violation of an interim peace order). In that case, we rejected the State's contention that the two offenses were "based on different behavior" because the peace order statute "punishes the violation of a court order," whereas "assault is a crime against the person." *Id*. at 656. We explained that "[t]his argument ignores that the peace order statute, like second-degree assault, punishes unlawful contact with a person and that appellant's two sentences punish him for the same 'criminal behavior' — the unlawful contact that occurred when he grabbed [the victim]." *Id*.

Although *Quansah* concerned a peace order and this case involves a domestic protective order, the State agrees that "there does not appear to be any substantial basis to differentiate the reasoning set forth in *Quansah*" from the circumstances herein. Generally, peace orders and protective orders are similar in that they are both civil orders

18

issued by a judge, ordering one person to refrain from committing certain acts against others, including, but not limited to, assault, rape, or sexual offenses, false imprisonment, and stalking. *See* CJP §§ 3-1501, et. seq.; Md. Code (1984, 2012 Repl. Vol), §§ 4-501, et. seq. of the Family Law Article ("FL"). The relationship between the parties determines which type of order can be requested. Petitioners eligible for relief *via* protective orders generally include relatives and individuals in domestic or sexual relationships. *See* FL § 4-501(m). Peace orders generally apply to other persons. *See* CJP § 3-1502(a), (b).

Additionally, whereas *Quansah* involved a second-degree assault and this case concerns assault in the first degree, we are persuaded that the reasoning in *Quansah* applies here. This is especially true considering that, under the required evidence test, second-degree assault is a lesser included offense of first-degree assault when the offenses arise out of the same event. *See* Md. Code (2002, 2012 Repl. Vol.) §§ 3-202, 3-203 of the Criminal Law Article ("CL"). *Cf. State v. Shird*, 81 Md. App. 328, 336 (1989) (holding that assault is a lesser included offense of an aggravated assault where the offenses arise out of the same event).[4]

Moreover, both the first-degree assault and the protective order statutes include assaultive behavior as necessary elements of the offense. The first-degree assault statute, CL § 3-202(a), provides that a person may not "intentionally cause or attempt to cause

---

[4] The jury heard instructions on the battery form of second-degree assault, both modalities of first-degree assault, and the crime of violating a protective order.

19

serious physical injury to another" or "commit an assault with a firearm[.]"[5]  Similarly,

the domestic protective order statute defines "abuse," under the statute the offense

includes, but is not limited to, an "act that causes serious bodily harm;" an "act that

places a person eligible for relief in fear of imminent serious bodily harm;" or "assault in

any degree[.]" *See* FL § 4-501(a)(i) - (iii).  There is no indication in the statutes that the

prohibited conduct in one of the statutes is any different from that or the other.

Finally, it appears that the State considered the criminal offenses to be based on

the same acts, at least considering its summation of the evidence that appellant was not

"supposed to abuse her, he wasn't supposed to threaten her, he wasn't supposed to

contact her in any way, and he was not supposed to possess a firearm."  Based on the

above, we are persuaded that the jury could have found that appellant violated the

protective order when he assaulted Warrick.  Thus, we shall vacate appellant's sentence

for violating a protective order because it merges with his sentence for first-degree

assault under the rule of lenity.[6]

---

[5] Maryland recognizes three modalities of assault: "'1. A consummated battery or the combination of a consummated battery and its antecedent assault; 2. An attempted battery; and 3. A placing of a victim in reasonable apprehension of an imminent battery.'" *Cruz v. State*, 407 Md. 202, 209 n.3 (2009) (quoting *Lamb v. State*, 93 Md. App. 422, 428 (1992), *cert. denied*, 329 Md. 110 (1993)).

[6] We decline to address appellant's alternative argument that the sentence for violating a protective order merges with his sentence for illegal possession of a firearm under the required evidence test.  *See generally*, *Appiah v. Hall*, 416 Md. 533, 545 n.4 (2010) (citation omitted) (declining to consider an alternative argument because: (a) it was not raised in the petition or cross-petition; and, (b) because the lower court's opinion was affirmed on the primary argument presented); *see also Bowman Grp. v. Moser*, 112 Md. App. 694, 702 (1996) (explaining that where relief is granted on primary argument,

**SENTENCES FOR WEARING, CARRYING, OR TRANSPORTING A HANDGUN AND VIOLATING A PROTECTIVE ORDER VACATED. JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY OTHERWISE AFFIRMED.**

**COSTS TO BE ASSESSED 50% TO APPELLANT, AND 50% TO PRINCE GEORGE'S COUNTY.**

---

an appellate court may decline to rule on the merits of an alternative argument), *cert. denied*, 344 Md. 568 (1997).